Isaac W. Mitchell, Appellant, vs. Frederick R. Cotton, Executor of John W. Cotten, Appellee.

Under the discretion vested in the Courts by the act of November, 1828, section 50, in reference to the allowance of amendments in pleadings at any time before trial, the plea of the statute of limitations may be filed.

Admissions made by the counsel of a party must be made in his presence, and without objection, to be binding upon him. Admissions by counsel of the law will not affect his client's rights, if there should be error in the admission.

The act of 1833, in regard to usurious contracts, declares that " the interest on the same shall be void, and the obligor or obligors forever exonerated from paying the same." This provision making only the interest void, excludes the idea of making void the principal.

Concealment by a creditor from a surety of material facts, by which the surety may be injured, or his rights affected, will invalidate the contract as to him, and discharge him from all liability. But the contract between the principal parties, of which a surety, without privity, can avail himself, for his discharge, on the ground of concealment, must be a valid contract as between the principals; and the act or transaction of which the surety seeks to avail himself for his discharge, must be such as lessens the ability of the principal to comply with his contract, or alters the rights of the parties, or enlarges the demand, to the prejudice of the surety.

The statute declaring that the whole interest only shall be void in a usurious contract, does not enlarge, but diminishes, the liability of the surety. An agreement therefore between the principals for usurious interest, to which agreement the surety was not a party or privy, does not discharge the surety from his liability on the principal valid contract between the parties.

Appeal from the Circuit Court of Leon County.

On the trial of this cause in the Court below, at the Fall Term, Hon. Thomas Baltzell, Judge of the Middle Circuit, presiding, the same issues were tried that were presented and tried on a former trial between the same parties at the Spring Term, 1847, of said Court.. Two other issues were taken and tried in this case, upon two additional and amendatory pleas, which the Court permitted the defendant to file, viz : The plea of the statute of limitations, and a plea of the discharge of Cotten, the surety, by reason of an alleged giving of time, and extension of credit to Doggett, the principal, without the knowledge or consent of the surety.

The testimony submitted to the jury was the same that was given on the former trial—a statement of which (as well as of the pleadings), will be found in the report of the case between the same parties, in the second volume of Florida Reports, page 136, and in the report of the case of Mitchell vs. Doggett, decided at January Term, 1847. See 1st Florida Rep., 356.

On the trial of this cause, plaintiff's counsel moved the Court to instruct the jury, as follows :

1. That the plaintiff may recover the consideration given for any usurious note or security on the money counts, provided there is no usury in the consideration itself.

2. If the jury believe, from the evidence, that the note of the first day of January, 1839, contained no usury, and was a valid contract in all respects, and was the consideration of the subsequent usurious

contract, then the plaintiff is entitled to recover the principal sum of said note, with legal interest thereon, up to the period of the making of the subsequent usurious contract, under the money counts in the declaration.

3. That our statute avoids only the interest on an usurious contract, and has nothing to do with interest or principal of a prior contract between the same parties, though such contract may be used as the consideration for a usurious contract; but the creditor is entitled to recover for his principal sum due and the legal interest up to the time of making such usurious contract.

4. The party setting up fraud, concealment, or giving time without consent of surety, or other matter in discharge of surety, must prove his allegations in discharge of himself.

5. That if the jury believe, from the evidence, that a promise was made by Henry Doggett, the principal debtor, to pay usurious interest in future for forbearance, such promise is void, and does not operate to discharge the surety, but both principal and surety are liable to pay the principal debt and legal interest up to the time of the making the usurious contract.

6. That both Cotten and Doggett being bound in the first instance, and the giving the note with the usurious premium being a subsequent and a distinct transaction, although the note declared on, or any part thereof, might be void, the pre-existing debt may be recovered on the money counts.

7. By our law, if the jury find usury, they can only deduct interest from the time the usury commences.

8. If two or more persons are jointly, validly bound, the law implies that the consideration passed to both of them.

9. That, under the statute of usury, a note or other security given upon a usurious contract, is not declared or made void, but the statute acts upon and makes void so much of the contract as relates to the interest secured thereby, both legal and the excess thereof; in other words, acts upon the contract, so far as the interest is concerned, from the time at which such illegal and usurious contract for extra interest is entered into and made.

10. That any acknowledgment or admission that the debt is a present and subsisting debt and unpaid, from which a promise to pay may reasonably be implied, will be equivalent to an express promise,

and will equally support the action ; and when a general acknow-
ledgment of a present subsisting debt is made, where nothing is said
to prevent it, a general promise to pay may and ought to be im-
plied.

11. That it is not necessary that the acknowledgment should state
the amount of the debt—extrinsic evidence is admissible to prove that.

12. If the jury believe, from the evidence, that John W. Cotten,
by his letter of the 25th November, 1844, acknowledged and admit-
ted a present subsisting indebtment on account of the debt due by
Doggett and Cotten specified therein, then that the law implies a
promise therefrom to pay, and will save the bar of the statute, if
within five years prior to the institution of the suit.

Which said instructions, excepting the tenth (10th) and twelfth,
(12th,) the said Judge did then and there give in charge to the jury ;
and the said tenth (10th) and twelfth (12th) instructions, the said
Judge did refuse to give in charge to the said jury.

And the said Judge did further instruct and charge the jury as fol-
lows, to wit :

13. " If you shall be of opinion, from the evidence, that at the
" time of entering into the note sued upon for $15,955, of January,
" 1841, signed by H. Doggett and J. W. Cotten, that J. W. Cotten
" was only security, and not primarily liable for the debt, by having re-
" ceived part of the consideration, and another note was given by the
" principal, Doggett, for the sum of $————, for part interest of said
" note, as part of the contract, but extending the same two and a half
" per cent. further, unknown to, and without any communication
" with, the security, so that he remained wholly ignorant that twelve
" and a half per cent. interest was in fact agreed to be paid by his
" principal, instead of ten per cent., as agreed by the note executed
" by the two, that this in law is a fraud on the security, invalidates
" his note and agreement, and plaintiff has not a right to recover
" thereon.

14. " That, under the decision of the Supreme Court, the note of
" 1839 is evidence of a debt against defendant, under the common
" counts, and that plaintiff is entitled to recover thereon, unless pre-
" vented by the statute of limitations.

15. " That the statute of limitations is a bar to the recovery of the
" plaintiff on the note of 1839, five years having run upon it.

18

16. " That the letter of Cotten does not make a new promise, nor " revive any engagement of Cotten ; its object seems to have been " to urge Mitchell to the early collection of the debt. To revive a " debt barred by the statute, there must be an express promise to " pay."

And the jury found a verdict for defendant.

And the said plaintiff, by his counsel, excepted and excepts to the refusal of the Judge to give in charge to the jury the tenth and twelfth instructions prayed and asked for by him ; and also to the instructions and charge given to the jury by the said Judge, numbered thirteen, fourteen, fifteen and sixteen, as above set forth ; and, inasmuch as the several matters hereinbefore stated and set forth, and his exceptions, do not appear of record, the plaintiff, by his counsel, presents this his bill of exceptions, and prays that the same may be signed and sealed by the Court, and made part of the record ; and it is done accordingly.

NOTE.—On the trial of the said cause, and after the evidence on both sides had been closed and submitted to the jury, the counsel for the plaintiff, who first addressed the jury and opened the cause, disclaimed and abandoned all right and purpose to recover under the first count of his declaration, and on the note dated 2d January, 1841, on which said count was founded ; but stated that he claimed to recover under the general *indebitatus assumpsit* accounts, and on the note dated 1st January, 1839, for the sum of $13,186, for the amount of that note with interest, which said last mentioned note the said counsel then held in his hand and exhibited to the jury, as his then subsisting cause of action ; and the arguments and addresses of the defendant's counsel were then made to the jury and the Court, on the state of plaintiff's case ; and, further, the counsel for the plaintiff, who concluded the argument to the jury, maintained his right to recover on the note of 1841 ; and having denied that the plaintiff's counsel were precluded from maintaining their action on the said first count of their declaration, and on the note of 2d January, 1841, the cause of action therein declared on, by reason of any statement or admission made by the leading and opening counsel in his address to the jury, and denying that any such had been made. Thereupon the defendant's counsel moved the Court to instruct the jury as follows :

" That if the jury believe that the opening counsel for the plaintiff placed his ground of recovery on the note bearing date in 1839, and on the general *indebitatus assumpsit* counts, that it is not competent for the concluding counsel for the plaintiff, after the counsel for defendant have concluded their argument to the jury, to revive and urge the recovery of the note, dated in 1841. That the plaintiff is held to have abandoned that first count, and all recovery under it."

Which charge the Court refused to give, but allowed the plaintiff to claim before the jury a recovery on either and both counts, extending at the same time permission to the defendant's counsel to argue the case again to the jury, if they thought fit—of which permission, one of the defendant's counsel availed himself, so far as he thought proper.

To which ruling, defendant by his counsel excepted, and prays that the same may be certified and presented as part of the record of the case on the appeal by the plaintiff.

*Brockenbrough*, for appellant :

I.

1. The Court erred in permitting defendant to amend his pleadings by filing the plea of the statute of limitations : Because the statute being a strict defence, the Court should not relieve the party by permitting him to amend by adding the plea. Angell on Limitations, 312, 313. Jackson vs. Varick, 2 Wend., 294. Johnson vs. Green, 4 Gill and Jo., 381.

2. The plea of the statute of limitations will not be received unless put in in due time, or amended if defective. La Motte vs. McLaughlin, 3 Har. and McH., 324. Perkins vs. Perkins' Ex'r, 1 Har. and McH., 400.

3. Defendant will not be allowed to add the plea of the statute. Cox vs. Holt, 2 Wilson, 253.

4. It is never allowed after issue joined. Hallegan vs. Golden, 1 Wend., 302. 1 Arch. Pr., 124.

5. On setting aside a judgment by default on affidavit of merits, the defendant will be required to withdraw the plea of the statute. Fox vs. Baker, 2 Wend., 244.

6. It is not allowed to be added to a plea of the general issue, in an action of trespass for mesne profits. 2 Yeates, 279.

## II.

1. The Court erred in refusing the plaintiff's instructions, 10 and 12. Archbold on Plead. and Evid. Pr., 28. Tanner vs. Smart, 6 Barn. and Cress., 603, 609. 2 Greenleaf Evidence.

## III.

The Court erred in the instructions which it gave, numbered 13, 15 and 16.

As to 13, see Cotten vs. Mitchell, decided here last term, and 1 Comstock, 278.

As to 16, see cases cited before on 2d head, from Archbold, Barnwell and Creswell, and Greenleaf.

Also, 1 Espinasse, 435. Bailey et al. vs. Lord Inchiqui, and notes there cited. Perley vs. Little, 3 Greenleaf, 101. Porter vs. Hill, 4 Greenleaf, 42. Deshon vs. Eaton, 4 Greenleaf, 414. Bangs vs. Hall, 2 Pickering, 378. Whitney vs. Bigelow, 4 Pickering, 111. Moore vs. Bank of Columbia, 6 Peters, 93. Allen vs. Webster, 15 Wend., 289.

We have cited the strongest cases against us—the most stringent rule—we claim that Cotten's letter covers all. Otherwise it is a delusion—a vain thing. If he is not liable—if he never means to pay in any event—why write—why urge collection—why speak of liability—why of duty to his family—why press Doggett—why complain of time ?

To say that he means to pay—"I owe it—press Doggett—but in any event I will never pay it"—is to force his words and wrest their meaning, to that which is palpably farthest from his thoughts.

Yet that must be done to bring that letter within the line of exclusion laid down by the cases.

## IV.

But besides the necessary and clear implication of liability and duty and consequent promise of the letter itself, it refers to another paper, which is therefore a part of it—"the note you now hold * * since I last signed with him." It has proved to have been the note of 1841.

It is as much part of the letter as if incorporated in it. The letter thus gives us not only the implication, but the express promise.

It is no answer to say the note of 1841 is tainted with usury. It is part of the letter.

1. And the usury then first commenced, and therefore he admitted he owes the debt before it began to run on usurious interest. The very allegation is, that usury was given for the further forbearance.

2. But if wholly void for usury or any other cause, it would still be proof of *admission* and promise—of those isolated facts—to bar the statute. Utica Ins. Co. vs. Kip, 3 Wendall, 373. Allen vs. Webster, 15 Wend., 289.

3. Apart from this, we have the note itself besides the letter, and the note is not void by any law. Only the interest on it is evaded.

4. Besides these, we have the evidence of Doggett evoked by themselves, which is conclusive, that Cotten owed, and promised in 1841.

## V.

This letter seems conclusive in our favor on the money counts, or account stated. Upon it we must recover the *debt* due for eight years, and interest. He asks a statement of the principal and *interest*. To what purpose, if he never meant to pay it? He complains that the debt is *constantly growing larger.* Is this no promise? If we render that letter in common language, as all would interpret it, it is this: How much do I owe? I have been security a long time— nothing is paid—the debt increases—I wish to be relieved from my responsibility—Doggett must pay you—or give another note without my name—or you must sue him as you promised to do whenever I requested—and if he cannot, or will not pay, I must, and will.

Upon that we sue Doggett—that is consideration enough to support the promise, apart from his prior indebtedness. Lansdale vs. Brown, 4 Wash. C. C. R., 150.

We have shown his indebtedness to us from Flake—His subsequent obligation of 1839 to us, in discharge of his own former debt, nothing ever paid.

What is to prevent these facts and his letter from giving us our whole claim of principal and interest on the contract of 1839, or on the Flake notes? Certainly not the statute of usury. It is as foreign as the statute of wills.

The decision of this Court in this case last term, establishes this. It throws us back in conformity to universal precedent on the contract of 1839. There is no usury in that. We *cannot mix contracts.* The Court cannot decide that we may recover upon an old sound

contract, and then apply to us the law of a subsequent usurious contract upon which we do not recover—And say under the latter, we shall have no interest.

To say we shall recover on the contract of 1839, is to say we do not recover on the contract of 1841, which is to say we recover on a contract in which there was no usury and from which no interest can be cut off.

*Randall*, for appellee :

This cause comes up to this Court a second time, upon *new issues*, in addition to the former ones, as presented in the case of Mitchell vs. Cotten, 2 Archer's Fla Rep., 136.   The new issues are—

1. Statute of limitations, p. 19, printed record.

2. Special plea of time given, or credit extended to principal, without the privity or consent of defendant, the surety.   Ibid.

The jury rendered a general verdict for defendant on all the issues. P. 21.

The first error assigned by plaintiff is, that the Court below erred in allowing the filing of these additional pleas.

We answer, first—That the discretion of the Judge below in allowing and disallowing amendments of pleadings, is fully and expressly granted by statute of the State, viz : 50th section act of November, 23, 1828, Th. Dig., 332, and is not subject to revision.

The question is already settled by this Court.   Stewart & Fontaine vs. Bennett, 1 Fla. Rep., 437.

But if the act of the Judge below was subject to revision in this case, it must be ruled that his discretion was rightfully exercised :—

1st. Because it was for the first time, and owing to conduct of plaintiff on the former trial, that the occasion arose for the filing these additional pleas.

2d. As regards the plea of limitations, the Court is referred to the act of the Legislature of Florida, November 10, 1828, Sec. 12, Th. Dig., 444, to prove the absolute right of defendant's executor to have the benefit of this plea.

Defendant's counsel further submit to this Court, whether the terms of this act do not, " *per se,*" raise a flat bar to plaintiff's recovery in this case, the right of plaintiff to recover being, by his *own act*, in two Courts, or trials, placed on the general *indebitatus as-*

*sumpsit* counts—in other terms, "*for a debt due upon an open account.*"

"*In limine,*" defendant's counsel contend that the note of 1841, and the special count of the declaration, are not to be considered as any longer constituting a ground of recovery, because of the facts of the *waiver* and *abandonment* of that note and count on the former trial, and by the leading counsel of plaintiff at the last trial. See case of same parties, 2 Arch. Fla. Rep., 136. Bill of Exceptions in printed record, p. 38.

The fact averred as occurring at the last trial, is directly and positively affirmed and proved by his Honor the Judge in the bill of exceptions, and cannot be gainsaid.

On sound principles of correct practice, the parties should be held to abide admissions thus solemnly made. For authorities, see Greenleaf on Ev., sections 27, 186, 205, 207. Young vs. Wright, 1 Camp., 140. Lord Ellenborough's opinion. Colledge vs. Horn, 3 Bing., 119, (11 Eng. C. L. Rep., 61.)

Second error assigned. The Court below refusing the 10th and 12th instructions asked by plaintiff, and granting the 13th, 14th and 15th instructions.

We say, the matters embraced by the 13th instruction were not concluded or rendered improper by any expressed opinion or judgment of the Supreme Court. That it was justified by the law and facts of the case, and for this we refer to the argument on this part of the case, on the former appeal between these parties.

Not considering that the note of 1841 is in question in *this case,* defendant's counsel have not argued that point.

But they further submit that, *right or wrong,* however the ruling of the Judge below in this 13th instruction may be regarded, that ruling, and the facts and case to which it applied, are entirely foreign to and without this case.

Defendant's counsel contend that prayers for instructions Nos. 10 and 12 are not strictly and accurately correct, as *abstract propositions ;* but in regard to the proceedings and evidence in the cause, could not be granted by the Judge below. If the Judge had recognized them as true in the abstract, and to be granted, he must have, of necessity, further instructed the jury, that all the attendant proofs and evidences going to take from the acknowledgment and admission of

defendant, Cotten, *all effect whatever*, because of the paper evidence referred to being written under mistake of facts, in ignorance of the attendant circumstances, and of the deception and fraud practiced by plaintiff. This addition to the instruction would have rendered their prayer unavailing.

The question of promise or no promise to be implied in this case, (there being no express promise,) was one for the Judge, and not for the jury—the evidence being a letter not disputed. 2 Greenleaf Ev., 357. Snook vs. Mears, 5 Price Eq. R., 636. Strong vs. Wright, 9 Mees. & Wel., 630, (Rolfe, B'n.) Burke vs. Wood, 13 Price, 667. Waters vs. Earl of Tharnet, 2 Ads. & El., 769, (42 E. C. L., 904.) Colledge vs. Horn, 3 Bing., 119. 3 Taunt., 380. Bell vs. Morrison, 1 Peters, 364. Craig vs. Cox, Holt's N. P., 380.

Acknowledgment or admission—evidence of, from which promise will *be implied*. Cases referred to—Rowcroft vs. Lomas, 4 Maul & Sel., 457. Snook vs. Mears, 5 Price, 636, 639, (Graham & Garrow, Barons, p. 639.) Mucklow vs. St. George, 4 Taunt., 612–13· A Court vs. Cross, 3 Bing., 329, (11 E. C. L., 124.) Scales vs. Jacob, 3 Bing., 638, (13 E. C. L., 85.) Tanner vs. Smart, 6 Barn. & Cr., 603, (13 E. C. L., 273.) Crips vs. Davis, 12 Mee. & W., 159. Strong vs. Wright, before cited. Brook vs. Wood, same.— Kennett vs. Millbank, 8 Bing., 38. American cases—Sands vs. Gibson, 15 John., 511. Allen vs. Webster, 15 Wind., 284. Clark vs. Dutcher, 9 Cow., 674. Clemenson vs. Williams, 8 Cranch, 72. Melzel vs. Buzard, 11 Wheaton, 309. Bell vs. Morrison, 1 Peters, 351. Opin. of Mr. J. Story, 356, 357, 359, 362.

By the latest English decisions in the Exchequer, a mere acknowledgment of personal indebtedness is not sufficient. By the American cases, "a liability and willingness to pay" must further appear, and neither of these last requisites can be inferred from Cotten's letter. These principles, too, are applicable properly to the principal debtor, and not to a surety. But Cotten's letter was written under an entire ignorance of the true facts, under mistake, induced by fraudulent misrepresentations.

Moreover, Cotten's acknowledgment applied to the note of 1841, and not to any other debt or security, and the Court will not extend it to any thing but *the note;* and if that note fail, the acknowledgment or promise fails likewise. Clark vs. Dutcher, 9 Cow., 674.— Page's Adm'r. vs. Bank of Alex., 7 Wh., 35.

In this last case, testator repeatedly promised to pay the *note*, but the note failing, the Court would not extend the promise to any collateral liability, nor to the " general *indebitatus assumpsit* counts." It may be proper to add, that this last case did not turn (as is asserted) upon the peculiar principles of the law of Virginia, but upon the general doctrine of the common law.

But if the note had contained a promise, *an express promise*, yet being made in ignorance of the facts of the release of promisor by act of promisee, it would not be binding. Cockshot vs. Bennett, 2 T. R., 765–6. Goodall vs. Dally, 1 T. R., 712. West vs. Ashdown, 1 Bing., 164, (8 E. C. L., 282.) Cartwright vs Williams, 2 Stark, 340, (3 E. C. L., 374.) This last case very strongly applies in the facts as well as the doctrine of the present case.

Even after payment, under such circumstances of fraud and mistake, money paid by party released in law may be recovered back. Buller vs. Harrison, Cowp., 555. Bize vs. Dickerson, 1 T. R., 285.

It is perfectly admissible and proper here to comment upon the diversity of views entertained by plaintiff's counsel in this and the Court below, upon what cause of action to ground their recovery— the leading counsel contending for the note of 1839, the associate counsel for that of 1841. They cannot both be right, for that would involve a monstrous absurdity. Mr. Thompson is right in holding on to the note of 1841, (*if permitted, after what has occurred*)—for if that be abandoned, unquestionably the right to recover is gone.— Plaintiff, Mitchell, having once voluntarily surrendered, given up to be cancelled, the note of 1839, can never again revive that note against the surety, independently of the bar of the statute of limitations ; and this notwithstanding any promise, express or implied, from surety, in ignorance of the facts of his discharge. Cartwright vs. Williams, 3 E. C. L., 374, already cited.

If the pretension of leading counsel be allowed, principal will be held fixed, bound on the note of 1841, and the surety on that of 1839—thus severing and making diverse their liabilities.

Defendants never did contend for the doctrine of *novation*, as being borrowed from the civil law, *with all its incidents*, but to the extent invoked by them, it does prevail at common law.

1st. That *two valid securities*, the one taken as the substitute for the other, cannot both be in existence at the same time.

19

2nd. That when a new *valid* security is taken by creditor from principal, the surety on the old security, is no longer held bound by the first.

Not a case can be found in the books to the contrary. Smith's Case of Contracts, 49 Law Lib. Ap. 171. Burge, 167.

The note of 1841 is no nullity, was not void, in the sense of the New York and other cases. No law made it void, as it would have been in England and elsewhere, under certain usury laws.

But supposing there existed error in any of the foregoing rulings of the Court, none of these objections apply to the additional special plea filed since the first, and before the last, trial. The only instruction asked by any, was by plaintiff's counsel, touching " giving time or extending credit," and that *was granted.* That issue, with all the others, was found for defendant by the general verdict.

The Court below might have been applied to, if the facts warranted the application, for a new trial. Waiving that, plaintiff is without remedy for any mistake of jury. Their verdict cannot now be impeached. But we go further, and assert, that the facts of the case warranted the finding.

After the note of 1839 had arrived at maturity, plaintiff extended time and credit to principal by taking another valid security, viz : the note of 1841, by which he suspended his remedy against principal. And if, as we contend, the note of 1841 was obtained from Cotten by false pretences, by fraudulent misrepresentation, then that note, being void as regards him, can bind and conclude him to nothing. It is no evidence of his assent to the extended credit. This note of 1841 is the only evidence in the cause, of any such privity or consent. As to the effect of Cotten's letter, that was written years after the time of credit extended, and was written in equal ignorance of facts, under the influence of the same fraud and deception—See the before cited cases of Cockshot vs. Bennett, Kennett vs. Millbank, 8 Bing., 38. West vs. Ashdown. Cartwright & Williams.

Cases referred to as doctrine of " giving time to principal, without assent of surety :"

1 Paine C. C. R., U. S. vs. Tillotson. Mr. J. Thompson opin. 320–1. 1 Holt, 84, (3 C. L. R.) 6 Taunt., 379, (1 E. C. L.) Archer vs. Hale, 4 Bing., 464. (15 E. C. L., 42.) Bowmaker vs. Brown, 7 Price, 223, 234. Gold vs. Robson, 8 East., 576.

Samuel vs. Howarth, 3 Merivale, 277. McLemore vs. Powell, 12 Wh., 554, (6 Cow., 636.) Mr. J. Story's opinion, p. 637.

In the argument thus far presented, the counsel for defendant have acted on the firm persuasion that the right of plaintiff to recover on the note of 1841 will be repudiated by the Court, because of the incidents attending the two trials in relation to that note. And they have not adduced the arguments and authorities heretofore offered to impeach the validity of that note on its intrinsic demerits. But as by possibility they may be mistaken in the first supposition, they beg leave to recall the objections heretofore presented, both in the Court below and in this Court, to the validity of that note, as regards the surety, Cotten.

It has been argued as if the objection was only founded on the *usury laws,* and existed *because of the usury ;* whereas the objection would be the same, and the surety's release would be equally assured, if no usury had been perpetrated in the excess of interest exacted. It has been asked from the Bench if a case can be shown from the books where the release of the surety was wrought by a subsequent exaction of usurious interest ? We answer that our defence is not under any statute, but at Common Law.

When stringent statutes prevail, creating forfeitures and penalties for imputed fraudulent exactions, no other resort need be had beyond the provisions of such statutes.

But in principle and reason, and under the most direct analogies, numerous cases can be cited precisely resembling the present. Let us now re-state the doctrine we assert, and some of the leading cases, premising, as the Court will see, that the doctrine is precisely the same in Courts of Law and Equity.

And first for a summary of it, see 1 Story's Eq. Jur., 329, 386, sec. 177. " The concealment from the surety of any of the terms of the principal contract, prevents *any obligation* arising from the engagement of the surety. It renders the engagement a nullity."

This covers the whole ground we contend for.

Our " principal contract" was the note of 1841—our then sole subsisting " contract."

Very material terms of that contract—a secret excess of interest beyond that apparent on its face—was concealed from the surety— and what is the consequence ?

It "prevents any obligation arising," &c.

"It renders the engagement a nullity."

Does it merely create a forfeiture, as regards "the excess?" Certainly not. That would be inadequate—a very short measure of justice.

Look now to the first case formerly cited : Pidcock vs. Bishop, 3 Barn. & Cr., 606, (E. C. L.)

In that case it was not the excess of ten shillings per ton on the iron charged, which was forfeited, but the whole contract, the whole debt.

In that case, too, the *excess* did not even increase the ultimate responsibility of the debtor, for it went to pay an old debt, not to increase or create a new one. It never was a charge against the surety, and never could swell the amount of his liability *directly*, for his guarantee was for a limited amount, and the suit for less than the limit. Yet the Judges all declared it a fraud on the guarantor, and vitiated his contract.

See language of Ch. J. Abbott, page 198—same of Bailey, J., 198–9.

In that case no such excess was actually paid by any one, but only stipulated to be paid—only charged in the "bill of parcels."

Can any distinction be founded between *excess of price* and *excess of interest?*

Another strong case is Jackson vs. Duchain, 3 T. R., 551. Here there was no actual imposition practised upon any one in respect to *extortion,* or excess of any kind. But yet the secret agreement between the creditor and the principal, without privity of surety, was the sole ground of invalidating the whole engagement. Neither was any stipulated excess in this case actually paid.

See reason for the decision in opinion of Ashurst, J., p. 553 : "If surety had known of the private agreement, he would not *probably* have advanced the money."

The principle in that and the present case is "*ex dolo malo, non oritur actio.*"

Other cases. Stone vs. Compton, 5 Bing. N. C., 142. Cockshott vs. Bennett, 2 T. R., 765–6. Smith vs. Bromley, 2 Doug., 696, (in *note.*) Jackson vs. Lomas, 4 D. & E., 166. Leicester vs. Rose, 4 East., 372.

In several of the foregoing, neither principal nor surety were injuriously affected, in a pecuniary sense. Nor were the claims of the party released always of a meritorious character. In some instances the party relieved—discharged—was participant in the fraud.

In all, the release was total from the whole engagement, or contract, and not from the excess.

Other cases. Archer vs. Hale, 15 E. C. L., 42. Henry vs. Stone, 2 Rand., 464. 3 Merivale, 277—opinion of Lord Chan. 7 Price, 223. See 1 Paine C. C. R., 305 to 335. Judge Thompson's opinion, 320—" Any agreement," &c.

Same, page 321—Any new debt increased, or demand enlarged, &c., to prejudice of surety, &c., will discharge him, &c.

"These are controlling and undeniable rules, and universally admitted, both in Courts of Law and Equity."—Ibid.

And mark his conclusion : " But whether the alteration were for the benefit or prejudice of principal, cannot enter into the question," &c.

See also page 328, the answer to the suggestion that the sureties are not injured by the variation : " That they are only to be reached under the unaltered admitted terms of the original engagement."

And whether the alteration leaves them liable on the portion of the contract *not altered*. He decides the contrary. See his emphatic language on this point.

In conclusion, defendant's counsel respectfully submit, that their defence is at common law, and not under the statute of usury, and they conceive that much misapprehension would have been avoided if no reference had been made to cases of usury.

At common law, the obligations of sureties are " *strictissimi juris,*" and entire candor and good faith are exacted from all who deal with them, under penalty of their entire release. Not a case can be found where the remedy stops short of their total discharge, when secret and fraudulent exactions are *sought* to be imposed upon their principal.

To stop with cutting off the mere excess, would be an inadequate measure of redress, would carry no adequate sanction.

In most of the cases, the excess never was charged to nor sought to be exacted from them. Yet the discharge was total.

*Long*, for appellee :

1. We deny that the Court below erred in permitting the defendant below to file the plea of the statute of limitations, after the cause was remanded from the Supreme to the Circuit Court. All amendments of pleading are in the discretion of the Circuit Courts, and cannot be assigned for error in this Court. Stewart & Fontaine vs. Bennett, 1 Florida Reports, 437, and authorities there cited. Our statute, however, is peremptory, which says, " The Court may, *at its discretion*, give leave to a party to amend his declaration, *or other pleading* in a cause, at any time before the case is submitted to a jury," &c. Thompson's Digest, 332. There is no exception to this discretion, excluding the plea of the statute of limitations. The discretion, then, is absolute, and this Court have no power to control it. Whether it would be wiser to allow this discretion to be so qualified as to be subject to revision by this Court, is for the Legislature to settle.

But we say the discretion exercised in this case was proper, and would not be altered, had this Court the power. The note of 1839 was not declared on in the declaration, or inserted in the bill of particulars, but another and different note was, namely, that of 1841. When this Court decided that it might be offered in evidence under the money counts, it was a virtual and important amendment of the declaration and bill of particulars. This is obvious—for it appears that the note of 1839 had been given up to Doggett ever since the 1st of January, 1841, when the note of that date was executed, and was so given and cancelled, in consideration of the note last mentioned. Of course its existence must have been unknown to plaintiff, when he filed his declaration. It was brought into the cause by defendant, to prove the real consideration of the note sued on, namely, that of 1841. When the plaintiff is allowed to regard it as set forth in the declaration and bill of particulars for the first time, does not common fairness require that the defendant shall be allowed to plead any defence which might exist in law and in fact ? A discretion which should have refused this, would have been unjust and oppressive in the highest degree.

Again: If it be said that this note of 1839 was not offered as a written subsisting contract, but only as a piece of written circumstantial evidence, to prove the *amount* of money due at the time the note

of 1841 was made, with a view to recover the original considera-
tion, &c., and that as defendant knew he would bring the same into
the cause, he is to be charged with a knowledge of the right and in-
tention of the plaintiff to rely on the same, we have three answers.
The first is, because the debt for which the note of 1839 had once
been the evidence, was " extinguished," and the evidence cancelled
and delivered to the maker, " by the substituted note of 1841," as
expressly declared by the Court in the suit against the principal on
this latter note.   The language of the Court is, " The note of 1839
was extinguished by the substituted note of 1841," upon which latter
note this Court then confirmed a judgment against Doggett, the prin-
cipal.   I think no case can be found where a note " extinguished"
as to the principal, has been held binding on the surety.   Counsel
do not pretend that such a decision has ever been made ; at least
prior to the decision on this cause, which they seem so to understand.
The defendant being a mere surety, as alleged in the pleas, estab-
lished by the proof, and admitted by the plaintiff, had no right to ex-
pect an attempt to recover the original consideration, under the
money counts specified in the note of 1839, on account of two other
distinct principles of law.   The first is, that whenever the surety-
ship of a joint and several obligor to a contract is established, the
presumption that he received the money, or any part thereof, is fully
rebutted.   That is the exact meaning of the difference between a
principal and a surety.   He that receives the consideration is not a
surety, but a principal.   A surety can only bind himself in writing,
by the statute of frauds, and if the written promise to " pay the debt
of another," becomes invalid by any means, the surety is discharged.
This most reasonable doctrine of the English Courts has been fully
established in this country.   An accommodation endorser and a sure-
ty cannot be made to pay the original consideration under the money
counts, for the same reason, namely, that in neither case do they re-
ceive the original consideration.   7 Wheaton Rep., 35.   8 Taunt.,
737.   7 John., 132.   4 Bos. & Pul., 351.

A third reason why the original consideration cannot be recovered
against the defendant under the money counts, is found in the fact
that he is an *executor*, to whom our statute applies.   The money due
upon the old note of 1839, fell due on the 1st day of January, 1840,
and the testator of defendant died subsequent to the 10th of June,

1845, near five and a half years after the same was due.   Our statute requires the " Court before whom such suit shall be brought, to cause to be expunged from such account every item thereof which shall appear to have been due five years before the death of the intestate." Thompson's Digest, 444.   Therefore, it seems plain that it was the duty of the Court to expunge from the bill of particulars the old cancelled note of 1839, without any plea of limitations.   I am not prepared to believe that this Court have decided, or for one moment meant to be understood as overruling, either one of these principles.   If I am mistaken in this, I most respectfully ask the Court to reconsider these questions.

2. My colleague having so fully investigated the questions raised by the assignment of errors, in relation to the instructions given and refused by the Court, and having so fully vindicated the action of the Court in this respect, I will proceed to show that the cause is with the defendant, upon different and independent grounds.

The plaintiff contends that the verdict and judgment in this cause is wrong, because he has failed to recover upon either the note of 1841, or upon that of 1839.   He does not pretend that he has any right to recover on both.   That he has heretofore openly abandoned all attempts to recover on the note of 1841, is plain from this record, and from the assertion of this Court, in its opinion in this cause at the last term.   At pages 147–8, the Court say : " The plaintiff, at the " trial of the cause in the Court below, *abandoned* the first count in " his declaration, which (as we have seen) was upon the note of " the 2d of January, 1841, and sought to recover only on the original " consideration."   The bill of exceptions in this case shows that the same was *abandoned* on the last trial also, by the leading counsel, and that his associate differed with him in that respect, and " in *his* argument to the jury maintained his right to recover on the note of 1841," in the language of the record.   This is about as much as saying that the associate counsel *abandoned* all hope of a recovery on the note of 1839, or the original consideration, and if so, we have the authority of the plaintiff's counsel for saying that no recovery can or ought to be had on either.

It is difficult to perceive how this Court is to determine whether a recovery can be had on either of these alledged causes of action— it being admitted that but one can righfully be recovered on, unless

Mitchell *vs.* Cotten, Executor.—Argument of Counsel.

the plaintiff will point out *which,* and show *why.* If the note of 1839 is good, it is merely because that of 1841 is bad, and if that of 1841 is good, it is because that of 1839 is bad. Every reason and argument which tends to uphold the one, has the exact same force and tendency to destroy the other. If the associate counsel can show that the note of 1841 ought to be recovered on, he will thereby establish that the note of 1839 ought not ; and if the leading counsel shall be able to prove that the note of 1839 ought to be recovered on, he will thereby establish that that of 1841 ought not. And hence this curious dilemma will ensue, that if each of plaintiff's counsel shall succeed in his respective aim to establish a right to recover on each, it will thereby conclusively follow that there exists no right to recover on either.*

3. It appears from the record in this cause, that all the issues are found for the defendant. It also appears that the two instructions refused by the Court (10 and 12,) refer alone to the plea of the statute of limitations. Therefore it is immaterial whether those instructions should or should not have been given. One issue in favor of a defendant is sufficient. In this case there are at least two upon each count of the declaration, to which there is no exception in the record.

The plea of the *general issue* was filed prior to our new rules, with notice of special matter, and applies to both notes and both counts in the declaration. That is found for defendant. Under this plea, all the proof in the cause was admissible, and the notice accompanying that plea recites all the facts which are proven, and they clearly make out a case of payment, satisfaction, extinguishment and release, as to the note of 1839, by the substitution of that of 1841. The rule on this subject is laid down in Chitty's Pleadings as follows :

" In *assumpsit,* before the Pleading Rules, (Hil. T., 4 W., 4,) al-

---

* The associate counsel for plaintiff, after relying upon the decision of this Court at its last term, to prove that the note of 1839 might be recovered on under the money counts, being asked in conclusion which one of the notes he considered himself entitled to recover on, replied, " I think we are entitled to recover on the note of 1841." This would seem to show that the plaintiff's counsel do not themselves believe that the decision of this Court has overruled either of the three principles of law, which we have shown prohibit a recovery on the money counts, the amount of money mentioned in the note of 1839.

most every matter might be given in evidence under the general issue, *non assumpsit*, on the ground, as was said, that the action was founded on the contract, and the *injury* is the *non-performance* of it, which disaffirms the *continuing obligation of performance* of the contract *at the time when the action was commenced*, goes to the gist of the action." 1 Chit. Plead., 472.

The 4th instruction asked by the plaintiff was given by the Court in these words : " The party setting up fraud, concealment, or giving time without consent of surety, or other matters in discharge of surety, must prove his allegation in discharge of himself." Now it is plain that the jury were not misled on these points, and they were all at issue under the general issue, and notice attached thereto, and two of the matters were also specially pleaded, namely, fraud in the concealment from Cotten, the surety, that a greater rate of interest was secretly contracted to be paid by the principal than was made known to the surety, or expressed on the note, and also that time was given to the principal without consent of surety. The fraud and concealment of the true contract applied to the first count of the declaration, upon the note of 1841, and the giving time without consent is specially pleaded to each count, and to both notes. These matters were provable under the general issue, but they were also specially pleaded, doubtless to raise the question of law directly whether they constituted good defences to the action, in case the plaintiff should signify any doubt upon the point, by demurring. This he did not dare do, but joined issue. It is no matter of surprise that the plaintiff should abandon the first count and the note of 1841, when these issues were so perfectly sustained by the defendant's proof. Then it was that the old cancelled note of 1839, being found among the papers of the cause, as a link in the chain of defendant's proof, was seized upon by the plaintiff, and offered in evidence under the money counts on the first trial ; but as the Court refused to allow it to be read in evidence, the case was brought up to this Court to obtain this permission, which was then for the first time granted. Upon the last trial, the plaintiff was allowed to offer the note of 1839 in evidence under the money counts, but the proof under the general issue, and under the special plea of extension of time, were just as potent to bar the note of 1839 as it had been, and then was, to bar that of 1841.

I see no complaint made of the charge of the Court in relation to

these issues, and being found for defendant by the jury, must stand. Indeed, the record shows no hint or suggestion even, that the plaintiff considered the verdict upon these pleas unwarranted by the evidence. No motion for a new trial, nor any complaint of the verdict or charge of the Court upon these matters. This is decided by this Court in Mitchell vs. Chaires, 2 Florida Reports. Seeing that one good issue is as useful to a defendant, as a bar to the action, as a dozen, and that we have at least two unquestioned issues found in our favor, it is difficult, from the record, to imagine what useful purpose the plaintiff can have had in view in bringing the case to this Court. If it be said that the object was to settle the matters of law arising upon the instructions relative to the statute of limitations, we say, " sufficient for the day is the evil thereof."

It has been contended, rather vaguely, that instruction numbered 13, as given by the Court, is subject to objection. If I correctly understood the objections, they were as follows :

1. That the Court, in that instruction, takes from the jury the decision of the facts. This I deny. The facts stated hypothetically, are preceded by the distinct language, " If you shall believe from the evidence that," &c., and after reciting the facts thus hypothetically, concludes as follows : " this in law is a fraud on the surety, invalidates his note and agreement, and plaintiff has not a right to recover thereon." It is impossible to conceive of a charge less subject to the objection here made than this.

2. That the facts stated thus hypothetically in the instruction were not proved in the cause, and hence that their recital was calculated to mislead the jury. This objection is equally unfounded, for every fact recited is proven most distinctly, without the least conflict of evidence as to any. They are all the most familiar facts in the case, viz : that Cotten was a surety only, and that he was ignorant of the secret agreement between Mitchell and Doggett, the principal, that a greater rate of interest was to be paid than that stated on the face of the note of 1841. It was doubtless the clear proof of these facts which at the first trial induced plaintiff to abandon the note of 1841, and seek to recover upon that of 1839.

3. The third objection is, that the conclusion of law announced by the Court, namely, that such secret agreement " is a fraud upon the surety, invalidates his note and agreement," &c., is erroneous. The

first answer to this objection is found in the numerous authorities cited by my colleague, directly in point, and the fact that not one solitary authority has been cited to the contrary. Indeed, this objection comes strangely from plaintiff in this place, and at this stage of the cause, for the first time. If these facts did not amount to a good defence, the special plea in which they are set forth in almost the very language of this instruction, should have been demurred to, and at least some authority cited, if any existed, overruling those cited on our side. By taking issue upon the plea stating these facts as a bar to the action, plaintiff has admitted the question of law, and cannot now be heard to question the same. The plaintiff's case is literally staked upon each and every issue joined in a cause. When the issue is found against him, it is rather late to inquire whether the plea constituted a good defence or not.

Briefly to recapitulate :

The note of 1841 cannot be recovered on, because, 1. The plea of the general issue is found to be true. 2. Because the special plea of fraudulent concealment of the true terms of contract from Cotten, is found to be true. 3. Because the special plea of extension of time without consent of Cotten, is found to be true.

These issues were found for defendant by the jury, under the distinct charge of the Court, that " The party setting up fraud, concealment, or giving time without consent of surety, or other matter in discharge of surety, must prove his allegations in discharge of himself," which instruction appears to have been given at the instance of plaintiff.

The note of 1839, or the " original consideration," cannot be recovered under the money counts in the declaration :

1. Because Cotten, the defendant, is only surety, and never received any part of the " original consideration."

2. Because the original consideration, or " note of 1839, was extinguished by the substituted note of 1841," the plaintiff having in fact sued and recovered thereon.

3. Because the issue of *non assumpsit* has been found for defendant upon the proof in the cause.

4. Because the special plea of extension of time to principal without consent of surety, has also been found for defendant.

5. Because the " original consideration," or money mentioned in

the note of 1839, was due more than five years before the death of defendant's intestate, and therefore should have been " expunged" by the Court below from the declaration or bill of particulars, in pursuance of our statute on the subject.

Each of these reasons constitutes a perfect bar to the plaintiff's suit.

*L. A. Thompson* replied.

LANCASTER, J.

This cause was before this Court by writ of error, at the January term, 1848—see Report of that year from page 136 to 158, inclusive. It is now again here by appeal from Leon Circuit Court; but the questions raised by the bill of exceptions, which have been made part of the record in this cause, are very different from those then presented. After this case went back to the Circuit Court, upon the production of the mandate of the Supreme Court, it was ordered by the Court, in pursuance of said mandate, that the judgment theretofore rendered by the Circuit Court in this cause be reversed and set aside, and that the cause be docketed, and such further proceedings be had therein, as are in conformity, &c. After this cause was so docketed, and before trial, the defendant by his attorney moved the Court for leave to file two additional and amendatory pleas, to wit: A plea of the statute of limitations, and a plea averring that the promises and undertakings of John W. Cotten, defendant's testator, and on which this suit was brought, were made as surety of one Henry Doggett, and alleging that, for a valuable consideration given by Doggett, the principal, to Mitchell, the plaintiff, time was given, or a credit extended, without the knowledge or consent of defendant's testator, J. W. Cotten. After argument, the pleas were allowed by the Court, and the plaintiff by his counsel excepted thereto. And it is assigned for error, that the Court erred in permitting defendant to amend his pleadings, by filing the pleas before mentioned.

The act of November 23d, 1828, sec. 50, see Thompson's Digest, 332, provides: " The Court may, in its discretion, give leave to a party to amend his declaration, or other pleadings, at any time before the case is submitted to a jury;" but it must be done instanter, and if of substance, the adverse party has a right to a continuance. The record shows, after leave given, the pleas were filed on the same

day, to wit, instanter ; and the record does not show that any contin-uance was asked by plaintiff, by reason of the filing of said pleas. It was contended that the Court must, in any such case, exercise a sound discretion, in permitting the amended pleas to be filed—or, otherwise, it will be subject to reversal in this Court. It might be a sufficient answer to this objection to say, the record does not state the circumstances or reasons on which the Court exercised its dis-cretion of permitting the pleas, by way of amendment, to be filed, and in the absence of such reasons, this Court will presume the dis-cretion of the Circuit Court was soundly exercised. But the ques-tion was considered by this Court, in the case of Stewart & Fon-taine vs. Bennett, 1 Fla. Reps., 446, and it was there held, that, af-ter a " new trial, the pleadings of both parties can be amended by leave of the Court." Now, after the former judgment of the Circuit Court, in favor of defendant, was reversed and set aside, the case docketed, and further .proceedings ordered, it seems obvious that both parties could look to nothing but another, or new trial, and the case stood, in all respects, precisely like one on which a new trial had been ordered. The parties, therefore, had a right, by leave of the Court, to amend their pleadings, unless the decision in the case of Stewart & Fontaine vs. Bennett, is erroneous ; but, on looking into that decision, we are inclined to think it correct, and to regard it as authority.

From what has been said, it will be perceived that this Court is disinclined to entertain or allow objections to the rulings of the Cir-cuit Court, in matters appertaining to the pleadings, where a discre-tion is given them by law, and we might cite much authority for a similar practice in other Courts. We are, therefore, of opinion the exception we have been considering .was not well taken, and do overrule it.

The action in this case is founded on a promissory note, in the words following, to wit :

" On or before the 1st day of January next, we, or either of us, promise to pay Isaac W. Mitchell, or order, fifteen thousand nine hundred and fifty-five dollars, with ten per cent. interest from date, for value received, this the 2d of January, 1841.

(Signed,)          " H. DOGGETT,
" J. W. COTTEN."

The declaration of the plaintiff contains two counts—the first is a special count on the note above set forth, and the second contains the common money counts, and account stated.   To this declaration, there were at the original trial eight issues joined, two pleas having been demurred out—all which is fully stated in the report of that case in the year 1848, at page 136–7, and for brevity, is here referred to. At the late trial, and from which this appeal is had, all the issues of fact in the former trial, and the two others in this opinion before noticed, came on to be tried.   At the trial, plaintiff, as appears by the bill of exceptions, offered in evidence the note herein before set forth—a letter from John W. Cotten to Dr. Mitchell, the plaintiff,. post-marked Tallahassee, Fla., Dec. 3, paid—10 cents, and dated 25th November, 1844, and also the præcipe, showing the commencement of the original suit, to wit, January 8th, 1845.

The defendant then offered sundry depositions and exhibits, and the testimony of sundry witnesses sworn to in Court, which may be referred to herein, but for brevity, will not be set out.

It is contended " *in limine,*" by defendant's counsel in this Court,. that the note of 1841 (before set forth) and the special count of the declaration thereon, are not longer to be considered as constituting a ground of recovery for plaintiff, because (as he says) of a waiver and abandonment of that note and count on the former trial, and by the leading counsel at the last trial.   The only matter on the record touching a waiver by the plaintiff's attorney, will be found in the note appended to the bill of exceptions at the request of defendant's counsel, also signed by the Judge, and made part of the record and excepted to by defendant's counsel.

On the former trial, by reference to that record, it appears the Court instructed the jury, that the counsel for the plaintiff did not ask a recovery on the special count on the note, having conceded he could not recover thereon.   And this, we apprehend, is as much as he at any time intended to admit.   It was his intention, which he has followed with unwavering fidelity, to recover on the common counts, and whether he really entertained the opinion, he could not recover on the note and special count, or whether he desired to avoid that note, the interest of which by the testimony, he knew to be tainted with usury, and by recovering the consideration for which the note was given, on the common counts, to have interest divested of.

usury, from the date of that consideration, up to the time of judgment, it is perhaps not material to inquire ; but, admitting that counsel thought and conceded he could not recover on the special count, and the plaintiff's other counsel thought he could, and insisted on such recovery before the jury, to which insisting defendant's counsel were permitted to reply, and one of them did reply, ought such an admission to discharge and defeat any legal liability or obligation of the defendant, if plaintiff's counsel was mistaken in point of law, as to his client's rights ? In the case of Colledge vs. Horn, 3 Bingham, 199, where it was sought to introduce proof of an admission by plaintiff's counsel, and the testimony had been ruled out : Best, C. J., says, " the question is one of great difficulty, and I avoid saying any thing on it until we have all the facts before us. At present, it does not appear whether or not the plaintiff was in hearing of the statement made by the counsel, or how far that statement was authorized." In the same case, Burroughs, J., says : " parties are every day bound by the acts and declarations of their counsel ; if the plaintiff was in Court, heard what his counsel said and made no objection, I think he was bound." The other two Judges gave no opinion, but if we are to collect the law from this authority, which was cited by defendant, it seems that admissions made by the counsel, of a party, to bind that party, must be made in his presence and without objection. In the case of Young vs. Wright, 1 Campbell's N. P. C., 140, Lord Ellenboro said, " if a fact is admitted by the attorney on the record, with intent to obviate the necessity of proving it, he must be supposed to have authority for this purpose, and his client will be bound by the admission, but it is clear that whatever the attorney says in the course of conversation is not evidence in the cause." And Greenleaf on Evidence, as referred to, is to the same effect. The attempt here is not to bind the plaintiff by any admission of fact made by his attorney, to obviate the necessity of proof ; but to bind him by his admission of law, wherein he concedes he could not recover on the note sued on and special count in his declaration. Whether he could recover on that count, is a question of law, and we presume it will not be seriously contended that admissions of counsel of the law, where there happens to be an error in the admission, can make the law. The record abundantly shows, notwithstanding the admission made, that the note sued on was read in evidence before the

jury, that one of plaintiff's counsel maintained his right to recover on that note, and under the circumstances, the Court permitted plaintiff to claim before the jury on either and on both counts, extending permission to defendant's counsel to argue again before the jury, which one of them actually did. These occurrences do not, this Court is of opinion, amount to any waiver or abandonment of any legal right of recovery by the plaintiff, and ought not to bind him, as by one of his counsel he was still asserting his right to recover on the note of the second January, 1841.

We shall next inquire whether that note was and is good and valid in law, and whether plaintiff is entitled to recovery thereon. For these questions are raised by the record and exceptions sent here for review. The note is the joint and several note of John W. Cotten and Henry Dogget, and is expressed to be for value received ; and no question is raised on the record touching its execution, but every where in the record it is treated as the note of Henry Doggett and John W. Cotten, so far at least as their signatures to it are concerned. Suit was brought on that note by plaintiff, Mitchell, vs. H. Doggett and John W. Cotten, on the 8th of January, 1845, as appears by the præcipe in evidence in this suit, and as appears by the statement of that case in 1 Flor. Reps., 365. " Cotten, dying before trial, the suit abated as to him, but continued as to Doggett." In the decision of the case of Mitchell vs. Doggett, 1 Flor. Rep., 373, the question of usury being raised, this Court said " by the letter and spirit of the statute, whenever illegal interest is taken or contracted for, the whole interest is void." The 3d section of the Act of February 12th, 1833, Duval's Laws, 79, on which this decision was given, is in these words: " That when any note, notes, bond or bonds, shall or may be upon, or on account of any usurious contract, the interest on the same shall be void, and the obligor or obligors forever exonerated from paying the same." It is worthy of remark as distinguishing this statute from almost all others in other States or countries, that while others declare a usurious contract wholly void, this provides and declares the interest only shall be void, carefully abstaining from any provision declaring the contract for the principal sum void on which usurious interest is taken or reserved. The decision of the point last referred to, as given by the Supreme Court in that case, was strictly consonant with our statute,

21

and therefore sound. These views were again sustained by this Court at January term, 1848, in the case of Mitchell vs. Cotten. The learned counsel for defendant, in their argument of this case, seem to have lost sight of the manifest distinction between other statutes of usury, where it is provided that the whole contract shall be void, and our's in which it is only provided the interest shall be void. Now a provision which, for usury, makes the interest void, excludes the idea of making the principal void, for *expressio unius exclusio est alterius*. But counsel for defendant, in this case, now and in 1848, and in the former case of Mitchell vs. Doggett, gave the same construction to the statute of usury, we now seek to establish, by contending that the note of the 2d of January, 1841, given by Doggett and Cotten to Mitchell, and on which the special count in the declaration in this case is founded, is good as against Doggett, the principal, but void as to Cotten, the security. Now if our statute made the whole contract void, the note as against Doggett, would be void, and consequently void as against the surety also. But it is not denied in this case, that at the time of taking the note of 1841, although on the face of it, it was payable on or before the first of January next thereafter, with ten per cent interest from date, (which at the time of the contract was lawful) there was at the time of making said note a contract made by Mitchell and Doggett, that over and above the interest mentioned in the note, Mitchell was to have the further rate of two and a half per cent. additional interest, which was usurious, and that on the same day Doggett executed another note to Mitchell for $398 87-100, being the interest on the principal sum for twelve months at two and a half per cent. Doggett says, however, and it is nowhere controverted, that the usury in his contracts with Mitchell began when he executed the note declared on in this suit, and gave the note for $398 87c., above mentioned.

It seems that the sum of fifteen thousand nine hundred and fifty-five dollars, mentioned in the note declared on, was due to the plaintiff by defendant on account of a prior indebtedness, at the day of the execution of that note, free from usury, if the uncontroverted testimony of Doggett, one of the obligors, is to be relied on. Upon which state of case, under the statute of usury, we have no hesitation to decide that both obligors as such, became at the time of executing the note declared on, jointly and severally legally bound to the plaintiff,

Mitchell, for the principal sum named in said note, but for no interest whatever if the interest reserved (which seems to be admitted) was usurious.

The question is raised in this case, that upon the note sued on, Cotten was only a surety for Doggett, the principal, (which from the testimony of Doggett and the course of the argument, we think appears manifest was the fact,) and as such surety his rights were different from those of his principal, and that a concealment from him of the terms of the principal contract prevents any obligation arising from the engagement as surety, and renders the engagement a nullity. Upon reference to Story's Equity Jur., 329, referred to by defendant's counsel, we find the doctrine laid down thus: " Any concealment of material facts, or any express or implied misrepresentation of such facts, or any undue advantage taken of the surety by the creditor, either by surprise or by withholding proper information, will undoubtedly furnish sufficient ground to invalidate the contract." And at page 330, sec. 225, same book, the doctrine is stated in a more general form, thus, " that if a creditor does any act injurious to the surety, or inconsistent with his rights, or omits to do any act when required by the surety which his duty enjoins him to do, and the omission proves injurious to the surety, in all such cases the latter will be discharged." The distinction between the position of defendant's counsel, and the authority of Justice Story, just cited, is a plain one. The counsel says " the concealment of any of the terms of the principal contract." The authority referred to, in substance says, the concealment of material facts by which the surety may be injured, will furnish sufficient ground to invalidate the contract, and we think in reason as well as authority, the doctrine as laid down by Justice Story, should prevail. Why should a surety in matters between his co-obligor and his obligee which cannot possibly injuriously affect his interest and his obligation, insist on being informed ?

We have looked into a number of authorities cited to see if the above principle has been at all extended to favor sureties. In Pidcock vs. Bishop, 3 Barn. & C., 606 : One Tickell applied to plaintiff, John Pidcock, to supply him with pig iron on credit in the usual way, and agreed if the plaintiff would supply him he would pay them the market price and ten shillings per ton extra, in liquidation of an old debt due the plaintiff, John Pidcock. John Pidcock said he must

consult his partners, but he thought they would require a guarantee. John Pidcock afterwards agreed the iron should be supplied, Tickell paying the company the market price and ten shillings extra to himself on his private debt, and requiring a guarantee for the price of the iron. Tickell furnished the guarantee of the defendant to be responsible for £200 value of pig iron to be delivered to Tickell, but the agreement of Tickell to pay John Pidcock ten shillings per ton, extra, on his private debt, was not communicated to the guarantor.

In this state of case, Abbott, C. J., says, " I am of opinion, a party giving a guarantee, ought to be informed of any private bargain made between vendor and vendee, which may have the effect of varying the degree of his responsibility." " The effect (in this case) would be to compel the vendee to appropriate to the payment of the old debt a portion of those funds which the surety might reasonably suppose would go towards defraying the debt, for the payment of which he made himself collaterally responsible. That being so, I am of opinion that the withholding the knowledge of the bargain from the defendant was a fraud upon him and vitiated the contract." The other Justices concurred. But they all proceed on the ground that the contract as between vendor and vendee was valid, and increased the liability of the surety, which was a fraud on him.

In the case of Jackson vs. Duchain, 3 D. & East., 553, Ashurst, J., said: " It is clear, both on the principles of law and equity, that when any friend advances money, to relieve another person from the pressure of his necessities, and the parties interested enter into a private agreement, over and beyond that with which the friend is acquainted, such agreement is void in law, as being a fraud on such friend." Here it is to be observed, that Welsh, who was desirous of benefiting his friend, agreed to advance £70, which he understood to be the full purchase money, (for certain goods,) for such was the representation made to him, and £70 is expressed in the bill of sale to be the consideration. But now it turns out that the defendant was to give two promissory notes for a further sum, under a private agreement between her and the plaintiff, to which Welch was not a privy, and which, if he had known, he would not probably have advanced his money. This, therefore, was a fraud on him ; and the principles of analogous cases go to show that this private agreement between plaintiff and defendant cannot be enforced."—

The other judges concurred.   To apply the decision of this case to the one under consideration, it would make Doggett's extra note for $398 87 fraudulent as to Cotten, if he was not privy to it, and, therefore, as between Doggett and Mitchell, it could not be enforced. But our statute goes further, and declares that if that note was given for usurious interest, the whole interest shall be void, which diminishes Cotten's liability.   It is worthy of note here, the advancement made by Welch, the principal, is not declared fraudulent, or void, but only the secret contract, to which he was not privy.

The next case to be considered is the United States vs. Robert Tillotson, 1 Parris C. C. R., from 306 to 335.   The case in substance is this : One Hopkins had contracted with an agent of the United States to construct a fortification in the vicinity of Mobile Point, according to the terms, conditions and stipulations of a written contract, reference to which was to be had—and he dying, the right of performing his contract was assigned to his legal representative, one Hawkins.   Whereupon Hawkins, with the defendant, Tillotson, and one Nicholas Gouverneur, as his sureties, entered into bond to the United States for $150,000 penalty, with the following condition : " That if the said Hawkins shall well and truly perform, or cause to be performed, all the covenants, undertakings and engagements contained in the said contract, so made as aforesaid, by the said Benjamin W. Hopkins in his life-time, for the construction of the said fort, which remains to be fulfilled, and shall also faithfully and well account to the War Department of the United States, for all sums of money heretofore advanced by the said United States, under and in virtue of the last mentioned contract, and also for such further advances as may be hereafter made to facilitate the execution of said contract, then this obligation to be void," &c.   About seven months after the foregoing bond was made, Hawkins, the contractor, entered into a new contract with the United States, (without the privity of the defendants, his sureties,) as the Court says, materially changing the terms of the contract of Hawkins, for which they were bound, which new contract is set out in the report of the case, at page 312 to 316 ; and it is only necessary to read the case, to see that the terms of the contract, for which the sureties were bound, were so materially variant, that, if the new contract was executed, the other could not be.

On this branch of the subject, Thompson, J. says : " But whether this alteration was for the benefit, or to the prejudice of Hawkins, (the principal,) cannot enter into the question—this was a matter upon which the sureties had a right to judge for themselves, and it was not in the power of the plaintiffs to transfer the suretyship from one contract to another, without the consent of the sureties. The first contract became *functus officio,* so far as it was altered by the second ;" " but, admitting the first contract in part to remain in full force, the second was an essential alteration or modification of it, and cannot be binding on the sureties in this new shape ; such a rule would be placing it in the power of the principal to draw his sureties into responsibilities they never assumed, contrary to the law in relation to principals and sureties." Again, at page 320, it is said—" Sureties cannot be made responsible beyond the scope of their engagement. Any agreement between the creditor and principal, which varies essentially the terms of the contract, without the consent of the sureties, will exonerate them from their responsibility ; any new debt incurred, or the demand enlarged, or any act done to the injury and prejudice of the surety, will discharge him from all liability." Again, at page 333, the same Judge says : " The law is particularly watchful over the rights of sureties, and will not countenance any transaction between the parties that shall lessen the ability of the principal to comply with his contract, or that shall alter the rights of the parties, or enlarge the demand, to the prejudice of the sureties."

The principles to be deduced from these authorities and the others referred to, which have been examined, but to avoid prolixity, will not be further mentioned, are not variant from those on this point extracted from Mr. J. Story's Eq. Jur. In all the cases it is fairly collectible, that the contract between the principal parties, of which a surety without privity can avail himself for his discharge, as between the principals, must be a valid contract.

In the case before us, the surety, if, indeed, not privy, seeks relief from a contract which, as between the principals, was not valid ; and he seeks to make that invalid contract the ground of discharging him from the payment of a sum of money, which he validly bound himself to pay. By the usurious contract for interest, which was illegal, Doggett, the principal, did not lessen his ability to comply with his

obligation to pay that which was legal; neither are the rights of the parties altered or enlarged, to the prejudice of the surety, but to his benefit, for thereby he is discharged from the payment of all interest until judgment. As to the surety, it is not different from what it would have been, had a release of all the interest been given by the plaintiff to Doggett, one of the obligors—for the other would, as surety, be entitled to the benefit of it; but it would be monstrous to say, that such a release being given, without the privity of the surety, (the other obligor,) or a partial payment made, without his knowledge, would defeat his liability as surety, or obligor; every partial payment alters the rights of the parties, but not to the prejudice of the surety—and whether he is a privy to it or not, as his liability is thereby diminished, his consent will be presumed. Even in the case we are considering, the consent of Cotten, the security, to the usurious transaction, between his co-obligor and Mitchell, the plaintiff, is to be presumed, as he thereby saves several thousand dollars in interest he had contracted to pay. His counsel, however, place him in the attitude of refusing to consent, because they insist on a release from his entire obligation; but failing of this, it is presumed they will insist on, as well as consent to, the other—as the simple interest to the 2d January this present year, will alone amount to $14,-359 30, at the rate specified in the notes. The statute before recited provides, " that, on any usurious contract, the interest shall be void, and the obligor or obligors forever exonerated from the payment of the same"—the penalty in this act extends as well to the one obligor as to the other, and enures to the benefit of both; but it is the measure of redress for both.

The argument has proceeded upon the assumption, that the contract of Mitchell and Doggett for usurious interest was concealed from Cotten. Doggett testifies that there was a secret undertaking between himself and Mitchell for usurious interest, which was not made known to Cotten, but there was no bargain between witness and Mitchell to keep it from his knowledge; and to a cross interrogatory, he says Cotten may or may not have known of the secret stipulation of witness to Mitchell—did not learn it from witness, nor does he recollect ever to have conversed with Cotten upon the subject—from which it is inferable, if Cotten did not know of the stipulation, it was rather inadvertent than intentional, as

nothing passed between the parties, manifesting a design to keep it from him.

We close our review of the point under consideration, by reference to our decision in the case between the same parties at the January term, 1848, see Report p. 148—"The rule undoubtedly is, that a surety is not to be held beyond the precise terms of his contract; that the creditor has no right to increase his risk without his consent. But in Tudor vs. Goodloe, 1st B. Munroe's Reports, 324, as cited in 2d Vesey Jur., 540, in note by Charles Sumner, it was held, that "a promise by the principal to pay usurious interest in future, (the precise case before us,) is void, and does not operate to exonerate the surety, and this is in accordance with general principles." And see further same case, p. 149, "Where a surety which is given on a loan of money is valid at its creation, no subsequent agreement of the borrower to pay usurious interest or premium for the further forbearance of the loan will invalidate the original security, but the subsequent usurious interest will be void." Crane vs. Hubbell, 7 Paige's Reps., 413. Mitchell vs. Doggett, 1 Fla. Rep., 374, 376, 377.

We have been thus particular in giving, in a more extended manner, our views of the circumstances under which a surety will be discharged from his liability, because, although this Court at the former trial of this cause, in January term, 1848, expressed clearly and substantially, the same views and opinions we now assert, and again in the case of Mitchell vs. Doggett, above referred to; yet these views and opinions appear to have escaped the attention of the learned Judge before whom this cause was tried in the Circuit Court. And that Judge gave the following instruction, number thirteen, which was excepted to by plaintiff's counsel: "If you shall be of opinion from the evidence, that at the time of entering into the note sued upon for $15,965, of January, 1841, signed by H. Doggett and J. W. Cotten, that J. W. Cotten, was only security, and not primarily liable for the debt, by having received part of the consideration, another note was given by the principal for the sum of $ for past interest of said note, as part of the contract, but extending the same two and a half per cent. further, unknown to and without any communication with the security, so that he remained wholly ignorant that two and a half per cent. interest was in fact to be paid

by his principal, instead of ten per cent., as agreed by the note exe-
cuted by the two, that this in law is a fraud on the security, invali-
dates his note under agreement, and plaintiff has not a right to re-
cover thereon." The position assumed in the foregoing instructions,
as law, are directly contrary to what is asserted in this opinion, as
law, and to what, according to our best information and judgment,
we believe the law to be. We hold, therefore, the exception well
taken, and that the opinion of the Court giving said instruction, must
be reversed and set aside. There were other instructions asked by
plaintiff and refused by the Court, and others not asked which were
given by the Court, numbered 10, 12, 14, 15, 16, and the rulings of
the Court thereon were excepted to by plaintiff's counsel. These
exceptions were elaborately discussed before this Court, but the de-
cision of them is not deemed material to this cause.

At the trial of this case in the Circuit Court at November term,
1849, the jury returned the following verdict : " We, the jury, find
verdict for the defendant ;" and the defendant's counsel insists, this
is evidence that all the issues were found for the defendant. At the
trial of this case in the Circuit Court, the instruction, No. 13, above
set forth, and there given, precluded the jury from finding a verdict
for the plaintiff on the first or special count of his declaration. Here
there is a bill of exceptions made a part of the record, in which the
whole testimony is embodied, together with the rulings of the Court,
in which respect it is entirely unlike the case of Mitchell vs. Chaires,
Ex'r., 2 Flor. R., 22. And we can have no difficulty in perceiving
with the instructions as given, the jury without particular inquiry as
to the proof of any plea, felt bound to render the verdict they gave ;
nor can we suppose, with the evidence before them, they would ever
have consented to the truth of some or most of the pleas pleaded in
bar, but for the instruction given. We think if an instruction was
given to the jury as follows : " If, from the testimony, you are of opin-
ion the note declared on in the first count of plaintiff's declaration
was executed by the defendant's testator, as co-obligor and surety,
and that an agreement was entered into between his co-obligor and
principal, Henry Doggett, for usurious interest with the plaintiff,
Mitchell, on the note sued on, without his knowledge, the Court char-
ges that such agreement for usurious interest, was a void contract,
and from the day of such agreement made void all interest on the

22

note sued upon, but did not injuriously affect Cotten, the surety, nor in any manner increase his liability to Mitchell, the plaintiff, nor diminish the means of his principal, Doggett, to pay and discharge said note declared on, and said note remained and remains a valid subsisting obligation, as well against Cotten, the security, as against Doggett, the principal, for the principal sum named therein, but for no interest whatever. And if you find the matters stated in the first part of this instruction, you will find a verdict for the plaintiff on the first count of the declaration for the principal sum named in the note, but for no interest." Such an instruction, for the reasons contained in this opinion, would, we think, be lawful and right to be given.

It is therefore considered by this Court, and it is hereby ordered and adjudged, that the decision given herein by the Circuit Court, and from which this appeal was taken, be reversed and set aside, that this cause be remanded for a new trial, and that proceedings be had thereon in conformity with the opinions and principles in this opinion contained.