Davis v. Graham.

Reversed.

---

DAVIS v. GRAHAM *et al.*

1. **Principal and surety**: DELAY: INSOLVENCY OF PRINCIPAL. Mere delay in suing the principal, though followed by his insolvency, will not discharge the sureties.

2. —— RECEIPT OF ADVANCE INTEREST ON MATURED NOTE. Whether the reception of interest in advance upon a note past due is *prima facie* evidence of a a valid contract to give time of payment, which will discharge the surety, *quere*.

3. —— But, if so, the rule cannot apply where it would defect the clear intention of the parties to the contrary.

3. —— EXTENSION OF PAYMENT. While an agreement to extend the time of payment to the principal, which will operate to release the sureties, may be implied from circumstances as well as expressly shown, the *onus* in either case is on the sureties.

5. —— An agreement to extend time of payment, which does not debar the holder from proceeding against the principal, is insufficient to discharge the sureties.

*Apppeal from Dallas Circuit Court.*

WEDNESDAY, AUGUST 31.

ACTION upon a note for $7,000, of June 15, 1868, on thirty days, made to plaintiff by Graham as principal, and his co-defendants as sureties. The contest is with the sureties, who rely upon the plea of usury, and that the plainttff for a consideration, extended the time of payment to the principal for one year, without their knowledge, etc. Trial to the court; judgment in favor of the sureties but against the principal, in the sum $6,106.78, and plaintiff appeals.

*Phillips & Phillips* and *Barcroft & Gatch* for the appellant.

*Polk & Hubbell* for the appellees.

WRIGHT, J.—In December, 1868, Graham, who was a banker, and then believed to be solvent, let plaintiff have certain notes and a judgment, amounting with interest, to something over two thousand dollars, upon responsible parties, and at the same time received from plaintiff some money. As to the true nature of this transaction the parties differ very widely. Plaintiff says he bought the notes and judgment, paying therefor $750; and that said transaction was in no manner connected with the $7,000 note. Graham, however, says, that being in great need of money, he negotiated these securities, receiving so much money ($262.50), plaintiff depositing at the same time, to help him in his stress, $500, the balance (some $1,820) being paid as interest on the large ($7,000) note, the same being calculated at about three per cent per month.

Looking at the entire testimony, we think it prepon-

Davis v. Graham.

derates largely in favor of defendants' theory of the transaction. Certainly, there can be no just ground for claiming that the finding, in this respect, is so far against the evidence as to warrant our interference. It is most unreasonable that paper of this amount, well secured upon parties abundantly good, should be sacrificed as claimed by plaintiff. Then, they had talked the day before, according to plaintiff's own testimony, about taking these notes toward the interest, estimated at about three per cent per month, and it is but too evident that this was a scheme devised by him to avoid, if possible, the charge or claim of usury. The real transaction, when stripped of its subterfuges and covering, was that Graham parted with the paper because he got some money to assist in meeting pressing calls upon him, and knew at the same time he was answering, without its being so said in words, the usurious exaction of this creditor. And this the creditor knew just as well, and with this understanding —well understood, rather than expressed, perhaps—he took the paper. The court did not err, therefore, in allowing a credit for the balance of this paper, after deducting the moneys received on the same.

But the point of difficulty relates to the claimed release of the sureties. And here, of course, there is 1. PRINCIPAL again more disagreement as to the facts than AND SURETY: the law. The immense mass of testimony has delay: insolvency of been examined and re-examined, in connection principal. with the arguments of counsel, each giving quite full extracts therefrom, and, after the most patient thought, we are led to believe that the judgment on this question is erroneous. And though, as our records will show, it is seldom we feel at liberty to interfere with a verdict or judgment upon this ground, there seems to be so little to sustain this, that our duty is plain to accord a new trial.

Every proposition of law stated by appellee's counsel

—certainly every one in the remotest degree applicable to the facts of this case—may be conceded, and still this judgment should be reversed.   We refer to some of them. Good faith is exacted from the creditor to the surety, at the time of the contract, and all the subsequent *transactions touching* the debt.   If there is a departure from this the surety will be released.   So, if by the creditor's fraudulent conduct the surety is lulled into groundless confidence, and he is prevented from obtaining indemnity, he is discharged.   A binding contract with the principal, with knowledge of suretyship (and this knowledge is undenied in this case), without the consent of the surety, which varies the terms of the original undertaking to his prejudice, discharges the surety, and a material variation would of course be presumed to be prejudicial. A binding agreement enlarging the time of the performance would have this effect.   It is not necessary that the debt should be actually suspended to produce this result. A valid agreement to suspend is sufficient; and this, whether the agreement be one upon which the principal has a remedy either at law or equity.

These rules are conceded, and we take no time to discuss either their reason or propriety, or to examine the cases in their support.    But while it may, in morals, perhaps, be unjust for the creditor, by his delay, without fraud or collusion, to increase the liability of the surety to pay the debt, it is not true that mere delay, though followed by the insolvency of the principal, will discharge the surety.   The delay to sue Graham, therefore, did not release the sureties.   And this, because they were not *misled;* because they themselves were in default; because it was their duty to pay ; because they could judge as well as plaintiff of the dangers of delay ; and because by notice they would have stimulated plain-

tiff to activity, and if after that he delayed, the peril was his own. Rev. ch. 75; *Hunt* v. *Bridgman*, 2 Pick. 581.

A proposition of doubt is, whether, as was held in *People's Bank* v. *Pearn*, 30 Vt. 711, and other cases, the reception of interest in advance upon a note past due is *prima facie* evidence of a valid contract to give time of payment. For the purposes of this case the rule may be conceded as claimed by defendants, without affecting the result. For, coming back to the plain, cardinal principle upon which this defense rests, and which is the real measure of defendants' rights and plaintiff's duty, we find, that, in order to discharge the surety by an agreement for an extension of time to the principal, it is necessary that the creditor should thereby be precluded from proceeding in the collection of his claim. If the creditor is neither expressly nor impliedly disabled by the agreement from suing on the demand at any time, the claimed enlargement of the credit will not discharge the surety. Apply this rule to the facts of this case, and plaintiff was clearly entitled to judgment. *Hunt* v. *Postlewait*, 28 Iowa, 427.

*2. —— receipt of advance interest on matured note.*

Under the issue the burden of proof was upon defendants. It was their duty to show a valid agreement to extend the time by a preponderance of evidence, or plaintiff was entitled to recover. This agreement, we admit, may be shown to have been express, or it will be equally good if it can be well implied. Now was there any express agreement that the time was to be extended? To our minds, none whatever. The only witness on the part of defendants to this point was Graham, and he, so far from supporting it, says expressly, that plaintiff said he did not want to do anything that would release the sureties, and that there never was any definite time fixed that the note should run. On the other hand, there are three witnesses, besides plaintiff, who testify that

*4. —— extension of payment.*

Graham said there was no agreement to extend the time ; and plaintiff himself, in language clear and explicit, shows that he knew the effect of an agreement to extend the time, and that he carefully and studiously avoided any arrangement or agreement which should disable him for one moment from proceeding with the collection of the note. There is in the testimony on this subject no conflict. It is not a case of conflicting testimony as to this cardinal point. Plaintiff could have sued upon this claim the next day. The sureties by notice to him could have compelled him to sue, or take the consequences, and the principal could not have prevented it. They could have paid the note, and at once asserted their rights by action against the principal.

And as to the implication arising from the alleged advance payment of interest, we have only to say, admitting the rule for which counsel contend, that it cannot apply, when it would defeat the clear intention of the parties. If the creditor manifestly intends to hold the sureties, and it is obvious that he refused to extend the time, the simple act of the advance payment of interest will not justify the influence or implication that there was such an agreement.

Let the judgment be reversed, and cause remanded for trial *de novo*.

Reversed.