The opinion of the court was delivered by
Valentine, J.:
This was an action on a note and mortgage. The note was given by Richard Jenness to William E. Haxton, and assigned by Haxton after due to Joseph M. Cutler. The mortgage was given by said Richard Jenness .and his wife Sybil Jenness to said Haxton to secure the payment of said note. The note called for $1,650, was dated November 3, 1870,' was due one year after date, and drew interest at the rate of twelve per cent, per annum after maturity. The mortgage was given on property belonging to Richard Jenness, and occupied by himself and wife as a homestead. The action was brought by Cutler against Jenness and wife. Jenness pleaded usury, and his wife pleaded that the mortgage was void. The trial was had before the court without a jury. The court found that the consideration for said note was $1,380 in money loaned by Haxton to Jenness, and that the other $270 of said note was for interest agreed to be paid by Jenness to Haxton for the use of said $1,380 for one year. The court also -found that Jenness, on the 3d of' November, 1871, (the day on which said note became due, paid to Haxton the sum of one hundred dollars, in consideration of which Haxton agreed to extend the time for the payment of said note for another year. No other payment was made. Judgment was rendered April 17th, 1873. If the judgment had been rendered in accordance with the contract between the parties it would have been *510 rendered for $1,938.75. But as the contract was tainted with usury the court rendered judgment for only $1,469.70, $1,280 of which was for money actually received by Jenness, and the other $189.70 was for interest. This judgment was a personal judgment against Richard Jenness alone. The court also rendered judgment for an attorney fee, and for costs, and ordered that the mortgaged property should be sold to satisfy said judgment. But the defendants below, Jenness and wife, claim that said judgment is erroneous, “First, because no judgment of any kind should have been rendered against them, or either of them; second, because no judgment should have been rendered against Richard Jenness for any interest; third, because no judgment should have been rendered against them or either of them ordering the mortgaged property to be sold to satisfy said money judgment.”
I. The court below clearly did not err in rendering said personal judgment against said Richard Jenness for said sum of $1,280, however usurious the note may have been, and however void the mortgage may have been. A personal judgment is always rendered in foreclosure cases in this state; (Civil code, § 399, amended by laws of 1870, p. 175, § 13; 4 Kas., 558; 7 Kas., 423, 424.) And the most rigid and penal usury law that was ever enacted in Kansas would allow judgment to be rendered for said amount. It was the amount which Jenness had actually received from Haxton nearly two and one-half years prior to the rendering of said judgment, and for which he had paid no interest, and of which he had paid no portion. Whether any-error was committed in rendering the judgment for said attorney fee, or for costs, does not appear from the'record brought to this court. Therefore, as to the $1,280, and the attorney fee, and the costs, the judgment of the court below must be affirmed.

*511
„ . tract.esstati¡te construea.

*512
s usurious note.

*510 II. Did the court below err in rendering judgment against Richard Jenness for interest on said $1,280? At the time said note was given, and at the time said $100 was paid, the statutes of Kansas did not authorize more than twelve per cent, interest per annum to be contracted for, or paid, on any *511 debt due or to become due. Said statutes also provided among other things as follows: “Any person contracting, by promissory note, bill of' exchange, bond, or otherwise, to receive a’ greater rate of interest than that allowed by this act, shall forfeit all interest, and shall recover no more than the principal of such note, bill, bond or other contract.” (Gen. Stat., 526, ch. 51, § 4.) The statute in force when this suit was commenced, and when this judgment was rendered, allowed parties to contract for any rate of interest they might choose, but did not allow the creditor to recover for more than the principal and interest at the rate of 12 per cent, per annum. (Laws of 1872, p. 284, ch. 134.) This latter statute took effect and the prior statute was repealed June 20th, 1872. Now, which of these two statutes governs in this case? Or does either, or neither? or partly one, and partly the other? For the purposes of this case we shall assume that no person can have a vested right in the privilege of repudiating his contract, and pleading usury; that an act of the legislature- requiring or permitting a person to perform his contract previously made, although a usurious contract, is not an act impairing the obligation of such contract; that an act of the legislature proyiding that all interest shall be forfeited where the creditor has contracted for more than legal interest is in the nature of a -penal statute, and may be repealed or modified by subsequent legislation so that a creditor who has contracted for more than legal interest during the continuance of such statute may, after its repeal or modification, collect' the amount of interest for which he contracted; (see cases cited in Cooley’s Const. Lim., p. 376, note 1;) and still we do not think that the repeal of said first-mentioned statute, or the change in the usury laws in this state, can affect any question involved in this case. The law in force when the said usurious contracts were made, is the one that governs in this case. In this state- the repeal of a statute is not an absolute repeal, unless the legislature says so in unmistakable language. In this state “ The repeal of a statute does not revive a statute previously repealed, nor does *512 such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under or by virtue of the statute repealed.” (Gen. Stat., 998, ch. 104, § 1, sub. 1; The State v. Boyle, 10 Kas., 113, 116; The State v. Crawford, 11 Kas., 32.) Every penalty incurred under an existing statute remains, after the repeal of the statute, unless taken away by the legislature by language that cannot be misunderstood. The repeal of the usury law in the present case was in the ordinary language used in such cases by the legislature, and therefore we think that the penalties already incurred under it were not taken away by such repeal, but remained in full force. The penalty for agreeing to take usurious interest, we suppose, is always incurred when the usurious contract is made. The penalty attaches because of the usurious agreement, and not for any other reason, and therefore it must be incurred when the usurious agreement is made. The court below did not allow the plaintiff the $270 agreed to be paid by Jenness as interest for the first year, nor the $100 agreed to be paid as additional interest for the second year, nor interest on $1,650, the face of the note, nor even interest on any amount for the first year, but allowed interest only on $1,280 after the maturity of the note, which was the second year after the money-was received; but even this we think was erroneous. The usurious contract avoided all interest. And the agreement to take interest at the rate of 12 per cent, per annum on $1,650, when only $1,380 was loaned to Jenness, was as usurious as any contract could be. The sum of $1,380, with 12-per-cent, interest for one year added, would amount to only $1,545.60.
4. illegal agree-Say o’?pa)-nd ment of bonus. III. Did the court below err in ordering the mortgaged property to be sold to satisfy said judgment? This question involves at least two others: First, Was said contract for the extension of the time for the payment of said note a valid and binding contract? Second, And if it waSj then chq gUOh contract destroy the validity of said mortgage? did it cancel all the legal obligations imposed by its terms, and render the same nugatory1*? It will *513 be remembered that said note was due when said $100 was paid, and that it was paid as a bonus, or as an additional amount, over and above the highest rate of interest allowed by law, for the purpose of having the time for the payment of said note extended one year. At the time said $100 was paid the following statute was in force, to-wit:
“Sec. 3. All payments of money or property made by way of usurious interest, or of any inducement to contract for more than twelve per cent, per annum, whether made in advance or not, shall be deemed and taken to be payments made on account of the principal; and the courts shall render judgment for no greater sum than the balance found due after deducting the payments of money or property made as aforesaid, without interest.” (Gen. Stat., 526.)
Principal ana suie y' Now as the law applied said $100 in part payment of the principal of the debt from Jenness to Haxton, and as Haxton was, at the time he received the same, entitled to the whole of the principal, the payment of said one hundred dollars could not be a sufficient consideration for any contract. It was only a part payment of what he had a legal right to demand and receive at the time he received it. And therefore, the agreement to extend the time for the payment of said note was without consideration, and was not binding upon any one. It is certainly settled by an unbroken current of authority, that where the creditor and principal debtor make a valid agreement for the extension of the time for the payment .of a debt, without the consent of the surety, the surety will be discharged. But it is equally well settled that the agreement, to have such effect, must be valid and binding, and founded upon a sufficient consideration. No void contract, and no contract not founded upon a sufficient consideration, can release the surety in any case. Vilas v. Jones, 1 N. Y., 274, 286 to 289; Ives v. Bosley, 35 Md., 262; Meiswinkle v. Jung, 30 Wis., 361; Brown v. Harness, 16 Ind., 248; Mitchell v. Cotton, 3 Fla., 134; Hunt v. Postlewait, 28 Iowa, 427; Davis v. Graham, 29 Iowa, 514; Waters v. Simpson, 7 Ill., 570; Galbraith v. Fullerston, 53 Ill., 126; Burke v. Cruger, 8 Texas, 66; Hunter v. Clark, 28 *514 Texas, 159; Miller v. Stern, 2 Penn. St., 286; Matthewson v. Stafford Bank, 45 N. H., 104; Wheeler v. Washburn, 24 Vt., 293; Joselyn v. Smith, 13 Vt., 353; Kyle v. Bostwick, 10 Ala., 594; Cox v. Mobile Rld. Co., 37 Ala., 320; Jenkins v. Clarkson, 7 Ohio, 72; Tudor v. Goodlove, 1 B. Mon., 323; Pike v. Clark, 3 B. Mon., 262; Anderson v. Mannon, 7 B. Mon., 219; Patton v. Shanklin, 14 B. Mon., 15; Nichols v. Douglas, 8 Mo., 49; Ford v. Beard, 31 Mo., 459; Hoffman v. Coombs, 9 Gill, (Md.) 284; Newell v. Hamer, 5 Mississippi, (How.) 684; Payne v. Commercial Bank, 14 Miss., (S. & M.) 24; Wadlington v. Gary, 15 Miss., 522; Haynes v. Covington, 17 Miss., 470; McGee v. Metcalf, 20 Miss., 535; Coman v. State, 4 Blackf., 241; Farmers Bank v. Raynolds, 13 Ohio, 84; 2 Parsons Cont. 26, note f; 2 Am. Lead. Cases, 415. Under the statutes of some of the states, however, the receiving of usurious interest, or the taking of other securities for such interest, with an agreement to extend the time for the payment of the debt, is considered a valid and binding contract, such as will discharge the sureties from the payment of such debt. (Duncan v. Reed, 8 B. Mon., 382; Robinson v. Miller, 2 Bush., 179; McComb v. Kittridge, 14 Ohio, 348; Blazer v. Bundy, 15 Ohio St., 57; Turrell v. Boynton, 23 Vt., 192; Cox v. Mobile & C. Rld. Co., 44 Ala., 611; Redenan v. Deputy, 26 Ind., 338; Calvin v. Wiggam, 27 Ind., 489.) Such is held where the contract is already executed, where the creditor has already received the usurious interest, where there is no action to' recover it back from the creditor, and where it is not applied as payment or part payment of the principal, as in this state. Therefore, neither the statutes of said states, nor the decisions of the courts under such statutes, have any application to this case. Of course, the payment of legal interest on a debt, before such interest becomes due, may be a valid consideration for a contract to extend the time for the payment of the principal. So may also the payment of a part of the principal before the same has become due. But to make a payment which, either by law, or by the parties,, is applied on the principal, after the *515 principal has become due, can be no consideration for any contract.

5.Mortgage of Sofhusband; assent of wife.

Husband ana wife, surety.

But supposing the contract for the extension of time for the payment of said note was a valid contract, then did it annul the provisions of said mortgage? A. very able and ingenious argument has been made by counsel for plaintiffs in error, for the purpose of showing that it did. We have also read a very able and elaborate . printed argument oi counsel tor plamtift in error in the case of “Pennock v. Haxton,” (not yet submitted to us,) maintaining the same doctrine. These arguments cannot easily be met or overturned. And yet the doctrine that they promulgate is so novel, and startling, that it is difficult to believe that they are sound. It is claimed that Mrs. Jenness, by joining with her husband in executing said mortgage, virtually became the surety of her husband; that the contract between Haxton and her husband, for the extension of the payment of said note, was a valid contract; (this we now assume as true, for the purposes of this argument, though we think it is not true in fact;») that as such extension was without the knowledge or consent of Mrs. Jenness, such extension released her as surety for her husband; that such release destroyed her previous consent given by her to have said property pledged and sold for the payment of said debt; that, as a mortgage of the homestead, to be valid, must have the consent of both husband and wife, this mortgage, which no longer had the consent of the wife, became void; and therefore, that it could not, after it became void, be foreclosed as against either the husband or wife. The first question for our consideration, and the controlling one is, whether Mrs. Jenness was such a surety for her husband as to entitled to all the rights and privileges of other sureties. We do not think she was. But before we proceed further, we would say, that the mortgaged property belonged solely to her husband,'and no part .of it belonged to her, except that she and her husband occupied the same as a homestead; that the debt secured by the note and mortgage *516 was solely her husband’s debt; that she did not sign the note, but that all she did was to join with her husband in executing said mortgage. Now, under such a state of facts, was the wife a surety ? We suppose she might be said in one sense to be the surety for her husband, but in a very remote and attenuated sense, and not at all in the sense in which the Avord is used in the law. We suppose it may also be said that the wife has in one sense an estate in the homestead occupied by herself and husband, although the title to the same may be in her husband; but still, if it is an estate, it is such an estate as has never been defined by law, an estate unknown to the common law, technically no estate at all. The whole estate in such a case is in fact wholly in the husband, with merely a restriction for the benefit of his family upon his power to alienate the same. It is true, the wife has an interest in the homestead, a present and existing interest, an interest that will be protected by the courts; but it is simply an interest growing out of the marriage relation, and has no other or different foundation than the marriage relation and occupancy. It requires no instrument in writing to create such an interest, nor does it require any instrument in writing to destroy it. A merely going upon the premises, and occupying the same as a homestead, will create the interest. The abandonment of the premises as a homestead will destroy the interest. And if the wife should die while occupying the premises as a homestead she would have nothing that would descend to her heirs, or go to her executors or administrators, and nothing that she could devise or bequeath. The whole estate would continue to belong to her husband, and after her death he could sell and convey the same by a deed executed by himself alone. As we have before said, the wife has a present and existing interest in the homestead, such as will be protected by the courts; but so she has in all the other property of her husband. Every husband is bound to support and maintain his wife, where she has not other means ample to support herself; and all his property, real and personal, not exempt from execution, is under continual pledge for such *517 support. Even where she abandons him for just cause, any person may furnish her with necessaries, and look to her husband’s property for compensation. And in many cases she may sue him directly for the means of support. (Civil code, §§ 649, 639.) The action in such a case is called an action for alimony. And in such action the court may restrain by injunction the disposition of the husband’s property pending the litigation. (Code, § 644, and §§ 237 to 249.) Now, notwithstanding this present and existing interest of the wife in all the property of the husband, still no one has ever yet supposed that the wife was such a surety for her husband-that, if a creditor of her husband should by a valid agreement extend the time for the payment of her husband’s debt, that the creditor would thereby release all her husband’s property from the payment of such debt. Even in states where it is necessary for the wife to sign a mortgage of real estate not a homestead, in order to bar her interest in. such real estate, no one has ever yet supposed that by such signing she became such a surety for her husband that she was entitled to all the rights and privileges of other sureties. Indeed, it has never been held in any state that a wife could become a surety, entitled to all the rights and privileges of other sureties, unless she pledged some portion or all of her own separate property.
This cause will be remanded .to the court below with the order that the judgment of the court below be so modified as to correspond with this opinion.
All the Justices concurring.