## WILLIAM H. JENKINS v. HIRAM V. SIMMONS, *et al.*

1. MORTGAGE LIEN; *Written Consent of Wife.* A mortgage lien on a homestead cannot be created without the written consent of the wife. The husband alone, by his contract, cannot change the character or the priority of a mortgage lien on the homestead; neither can he alone restore it after loss, or re-create it, without the consent of the wife, in the exact manner prescribed by law.

2. MORTGAGE — *Release — Court Cannot Re-create Lien.* A husband whose homestead was incumbered by a mortgage lien made an agreement with the mortgagee to execute another mortgage for the benefit of the creditor, who was to discharge his mortgage so that the new mortgage might become the first lien on the homestead, the money

derived from the new mortgage to be paid to the creditor; and for the remainder due the creditor, a second mortgage was to be executed by the husband and wife on the homestead. The new mortgage was executed, the money received and paid to the creditor, whose mortgage was released, and discharged on the margin of the record thereof. The wife had no knowledge of the agreement until after the new mortgage was executed, and the discharge of the first was entered on the record. She refused to execute the mortgage for the remainder due. The creditor brought an action to cancel the discharge, and to foreclose the original mortgage, praying the court to declare it a second lien on the homestead. *Held,* That the court has not the power to declare the original mortgage a lien on the homestead; such a lien can only be created by the written consent of the wife, in the manner prescribed by law.

3. HOMESTEAD LIEN — *Its Creation.* It is not within the equitable power of courts in this state to declare any indebtedness a lien on a homestead. The constitution of the state prescribes the manner of its creation, and this must be strictly followed.

## *Error from Chase District Court.*

ACTION by *Jenkins* against *Simmons* and wife and two others, upon five promissory notes, and to enforce a certain contract made by plaintiff and defendant *Simmons* in October, 1878; also, to obtain a decree setting aside and canceling the release of a certain mortgage executed by Simmons and wife on their homestead in Chase county, to secure the payment of the notes aforesaid, and for the foreclosure of said mortgage. Trial by the court, at the April Term, 1885. As conclusions of law, the court found that plaintiff was entitled to judgment against *Hiram V. Simmons* for the sum of $2,118.20, with interest at ten per cent. per annum until the same should be paid; that the plaintiff was not entitled to have the same declared a lien on said premises; that he was not entitled to have the release of said mortgage set aside and canceled; and that he was not entitled to any relief in the case other than a personal judgment against *Simmons.* New trial denied. Judgment was accordingly entered against *Simmons* for the sum above named with interest, and as to Mrs. Simmons, judgment was rendered in her favor. The plaintiff *Jenkins* brings the case

to this court. The opinion contains a sufficient statement of the material facts.

*J. B. Johnson,* for plaintiff in error.

*F. P. Cochran,* and *John V. Sanders,* for defendant in error Emeline Simmons.

Opinion by SIMPSON, C.: This is a peculiar case, and, in view of all the facts and circumstances proven at the trial and found by the court below, the relieving hand of a court of equity ought to be extended to the plaintiff in error, if the court has power to manipulate it. Whether it has or not, is the question.

The defendant in error, Hiram V. Simmons, was indebted to the plaintiff in error in a large sum of money. This indebtedness was evidenced by five promissory notes signed by Hiram V. Simmons alone. To secure their payment, a mortgage was executed on land occupied by Simmons, his wife and children, as a homestead. The mortgage was signed by Emeline Simmons, the wife of Hiram V. Simmons, as well as by the husband. The title to the homestead was in Hiram V. Simmons; the land is situated in Chase county; and the plaintiff in error is a resident of Jefferson county. In October, 1878, at a time when two or more of the notes were due and unpaid, Hiram V. Simmons and the plaintiff in error met in Valley Falls, in Jefferson county, and made an agreement that Hiram V. Simmons was to borrow the sum of fifteen hundred dollars from the Kansas Loan and Trust Company, or from other persons, and pay the same to the plaintiff in error on amount due on said notes. In order to enable Hiram V. Simmons to make the loan, it was agreed by the plaintiff in error that he would release and discharge the mortgage held by him, so that the sum of fifteen hundred dollars should be and constitute a first lien on the land, and that the plaintiff in error would pay all the expense accruing by said loan; that the said Hiram V. Simmons was then to execute a note for the remainder due the plaintiff in error, and secure the

same by a second mortgage on said land, payable at such reasonable time as he might designate — Emeline Simmons not being present and not having any knowledge of the agreement. About the 1st day of October, 1878, the $1,500 was procured, and a mortgage executed by Simmons and wife to secure it; which was duly recorded, and the money paid over to the plaintiff in error, he executing a release and discharge of his mortgage, and having the same entered on the margin of the record thereof. The only consideration for the release of said mortgage was the agreement above recited. He now seeks to have the release and discharge canceled, and his mortgage foreclosed. It will be observed from the statement above that Emeline Simmons was not a party to that agreement. There is a special finding that she was not present, and had no knowledge of it. The court below further found that Emeline Simmons did not in fact at any time consent to join in executing the second mortgage to the plaintiff in error, and did not know of the agreement between her husband and the plaintiff in error for a second mortgage, until after the first was released by the plaintiff in error.

The question then is: Can she be bound by a contract respecting her homestead right, to which she is not a party, and to which she has never given her consent? There is no necessity for assigning reasons to justify a negative answer to the question; it is too plain for argument. But it is said that she has taken advantage of the agreement, and acted upon it, so far as it resulted to her own benefit, and that in consequence of this participation in its benefits, equity requires that she should assume its liabilities and reciprocal obligations. There would be much more force and greater equity in the assertion, if the record showed that before she joined in the execution of the mortgage to the Kansas Loan and Trust Company, she had been made acquainted with all the terms and conditions of the agreement made between her husband and the plaintiff in error at Valley Falls; and the appeal would be still stronger if the plaintiff in error had exercised the most ordinary prudence respecting this trans-

1. Mortgage lien; written consent of wife.

action; had acquainted Emeline Simmons with the terms of the agreement, and had secured her assurances that a new mortgage would be executed before he had entered of record a release and discharge of the existing one. From the facts found by the court, the conclusion is irresistible that she did not execute the mortgage to the Loan and Trust Company with the intent or design to reap the benefits of the Valley Falls agreement and repudiate its obligations. She acted without knowledge of it; and when she was informed of it, promptly refused to agree to it, for the reason that the land was her homestead, and she was not a party to the contract. In this view it does seem that there is no equitable principle that can be invoked to aid the plaintiff in error. It might be different if the record disclosed that, with a full knowledge and a perfect understanding of all the terms and conditions of the contract made at Valley Falls, she had accepted its benefits and arbitrarily refused to assume its obligations. Hence we find no excuse for equitable interference in this respect on behalf of the plaintiff in error.

It is said that the plaintiff in error is entitled to the interposition of the equitable power of the court, because of mistake, surprise, accident or fraud in the contract with Simmons at Valley Falls, and that the discharge and release of his mortgage ought to be canceled for that reason. Counsel for plaintiff in error in his brief says: "It may be difficult in this case to determine with absolute certainty under which of these precise heads the plaintiff is entitled to relief;" and at the bar he contended that "the circumstances of the case bordered on all of them." The difficulty with us is to make an application of the principles by which a court of equity grants relief on the ground of fraud, accident, mistake, or surprise, to a party to a contract, to one who was not a party, or had no knowledge of such contract. If we are to enter into an inquiry of that kind, it is well to define its limits in the beginning. This is the precise question: When three persons have an interest in the subject-matter of a contract, and two of these interested, without the presence or knowledge of the

third, make an agreement respecting it, by the terms of which some action is to be taken by the third, and the agreement is executed so far as the two are concerned, and the third refuses to perform the part assigned, can the part performance of the two be canceled by a court of equity, on the ground that the agreement between the two was the result of mistake, accident, surprise, or fraud, when the sole and the only cause shown was the refusal of the third party to perform the part assigned? However binding such agreement between the two would be, it must be conceded that it could not be enforced against the third. It cannot be that under any conceivable circumstances a contract can be enforced against one who was not a party to it, or had no knowledge of it. If it had been alleged and shown that the two had no knowledge of the interest of the third, or had acted under a belief created by the acts or declarations of the third that the conditions of their agreement would be performed by such third party, the solution of the question could be easily determined. But the naked fact in the case is, that the two proceeded to make their agreement respecting the subject-matter of the contract with a full knowledge of the rights of the third, and performed their respective obligations created by it without reference to or apparently without a thought or care for the rights and interests of Emeline Simmons, notwithstanding they must have known, and did know as a matter of law, that no agreement of theirs could create a valid mortgage lien upon the homestead of Emeline Simmons, without her consent. It may be that they assumed, without thought or expression, that whatever Hiram V. Simmons determined to do with the land occupied by his wife and children as a homestead, the wife, as a matter of course, or as a matter of duty, would accede to without objection or protest. The court below found that the plaintiff in error released his mortgage, believing at the time he released that Hiram V. Simmons and his wife Emeline Simmons would join in the execution of a second mortgage on the homestead, to secure to him the payment of the remainder due on said notes. There must have been some evidence on which the court

predicated a finding as to such a belief as that on the part of the plaintiff in error. The evidence is not here; we are to determine this case on the findings of fact, and the conclusions of law as found and declared by the court below. There is no finding of accident, surprise, or mistake, on the part of the plaintiff in error, by the court below; neither is there a word, or syllable, or the recitation of a single fact, in all the findings of fact, that would authorize the most shadowy inference that fraud had been perpetrated. There is no pretense that Hiram V. Simmons was authorized to speak or act for his wife. In the nature of things it cannot be that her acts, declarations, silence, or conduct, occasioned surprise, contributed to a mistake, resulted in an accident, or perpetrated a fraud on the plaintiff in error, except it be that her subsequent refusal to be bound by a contract to which she was not a party, and of which she had no knowledge, can be tortured into some one or all of these causes for equitable relief. How can we say when the evidence is not before us, (and we are considering this case on the findings of fact by the court below, and there is no such finding,) that there was accident, surprise, mistake, or fraud, that ought to relieve the plaintiff in error from the result of a contract of his own making?

To authorize this court to exercise its equitable power to afford relief, and to declare a rescission of this contract, so far as the discharge and release of the mortgage of the plaintiff in error is concerned, it must appear that there was some misleading act of the defendant that induced the plaintiff in error to execute the release. In this case Hiram V. Simmons agreed to execute a second mortgage on the homestead, to secure the amount due on the notes held by the plaintiff in error. They both knew the wife's consent was necessary to the validity of such a mortgage, because that is the law, and they are conclusively presumed to know the law; and they are presumed to contract with reference to the law, and the law is a part of their contract. Even if Simmons knew the law, and the plaintiff in error did not, and Simmons was aware of the ignorance of the plaintiff in error in this respect, it would not be suffi-

cient to justify relief. (*Laidlaw v. Organ*, 2 Wheat. 178.)  The mistake, to be an available one to the plaintiff in error, must be confined to the matter of the agreement, and not to the performance of its conditions or to the inducements of the contract; and in case of misapprehension or ignorance about the matter of the agreement, interference can be invoked only when there has been fraud or misrepresentation in regard to it by the other side. What mistake did the plaintiff in error make respecting the matter of the agreement with Hiram V. Simmons at Valley Falls? He agreed to release and discharge a mortgage that was a first lien on the homestead, and take a mortgage that would be a second lien on the homestead; and Simmons agreed to make, execute and deliver such a mortgage. Relying on the promise of Simmons, he released his first lien; Simmons failed to carry out his part of the agreement, because the land proposed to be mortgaged is a homestead, and the wife refused to consent to the creation of the lien. Where is the mistake of law or of fact? What induced the mistake? What is the misleading act of Simmons which operated on the mind of the plaintiff in error to produce the assent of minds? Each knew all the facts, both knew the law : how can it be said that either acted under a mistake? Can the plaintiff in error be relieved on the ground of accident? To authorize the court to do so, it must appear that the plaintiff in error has a clear right, which cannot otherwise be enforced; or that he will be subject to an unjustifiable loss without blame or misconduct on his part; or that he has a superior equity to the party from whom he seeks the relief.

The plaintiff in error has enforced his right in this case by judgment against Hiram V. Simmons, for the full amount due him, and this furnishes a complete answer to the first cause for equitable interference in the case. We know it is alleged in the petition, and is among the findings of the court, that Simmons is insolvent; but all a court of law has to do to prevent equitable interference in this class of cases, is to furnish a remedy. Its obligation does not go to the extent of a collection of the judgment. The plaintiff in error is not without

blame or misconduct. He made the contract with Simmons deliberately, and it was of such a nature that it took time to complete it. He accepted the assurance of Simmons that a new mortgage would be executed, and rested and acted in view of that promise; ample time and full opportunity were given him to see and consult Emeline Simmons before he discharged his first lien. This he neglected to do, because he trusted the husband. It is such an example of carelessness and want of attention to an ordinary duty, as excludes all consideration of accident.

"In matters of positive contract, it is no ground for interference of equity, that the party has been prevented by accident from deriving the full benefit of the contract on his side; and the reason is, that he might have provided for such contingencies by his contract, if he had so chosen." (Story's Eq. Jur., 13th ed., p. 104, and authorities cited in foot-note.)

It is not necessary now to discuss the principles upon which courts interfere in equity, on the grounds of surprise and fraud, because there is nothing developed in the record, or in the findings of the court, that would justify interference for either˙ cause. The plaintiff in error did not contract with Simmons under such circumstances as that he was circumvented, mismanaged, or misled, but acted with an entire absence of any element of either surprise or fraud, and the facts constituting accident or mistake are wanting, and there is absolutely no showing that requires a court of equity, as a matter of abstract justice, appealing to the conscience, to order the cancellation of the discharge and release of the mortgage of the plaintiff in error. However strong the appeal might be, however clearly˙the circumstances might justify such interference, the court would be powerless to act. Section 9, article 15, of the constitution of the state, forbids the creation of a lien on the homestead without the consent of the wife. It is sought to avoid the application of this provision, by saying that such a decree as is prayed for by the plaintiff in error would not be the creation of a lien: it would simply be the restoration of a lien already created with the consent of

the wife. It must be admitted that, at the time of the commencement of this action by the plaintiff in error, he did not have in law a lien; he so alleges, and he prays that the court declare his mortgage a second lien on the homestead, and not a first as it was originally. He does not seek to restore his lien, but he asks the court to declare his mortgage a lien by virtue of its equitable jurisdiction. If the court had the power to do as requested, and exercised it, the lien so adjudged would not be the same that the wife originally consented to. To our mind, the talk about restoring the lien is a skirmish with words, rather than a fight for a substantial line of decision. To create a lien on a homestead, or re-create it, or to restore it after loss, or to change its character, or priority, an indispensable necessity is the consent of the wife. It cannot be done without such consent. The constitution of the state says so in plain words, and that is the end of all argument. No matter how strong the equity may be, the constitution is stronger. No matter how strong the appeal to the conscience of the chancellor, the organic law controls him. If the plaintiff in error had advanced Simmons the sum of four thousand dollars, under the promise of Simmons that a mortgage would be executed on the homestead to secure it, and his wife knew the facts, and, with the money in the possession of the husband, refused to join in the mortgage, no court in this state has power to declare that sum a lien on the homestead. The constitution forbids it. The wife's consent to the creation of the lien is an absolute prerequisite to its validity.

*2. Mortgage—release—court cannot re-create lien.*

The strong arm of the law, and the relieving hand of equity, are both powerless to take from the wife the hearthstone and the shade-trees of the homestead, except by her free and voluntary consent as prescribed in the fundamental law of the state of Kansas. We are not without authority to sustain this view; and while it is doubtful whether in any other state there is a constitutional provision as mandatory in its terms, and peremptory in its requirements respecting alienation of, or the

*3. Creation of homestead lien.*

creation of liens against, the homestead, as in this state, the courts of all the states in which there are such laws hold strictly to the rule that nothing but the consent of the wife to the alienation or mortgage, in the exact manner prescribed by law, can bind her. In the case of *Spencer v. Fredendall,* 15 Wis. 666, Mr. Justice Payne says:

"It seems scarcely to admit a doubt, that after a mortgage upon the homestead given in the ordinary form and signed by the wife, had been paid, it would be incompetent for the husband alone, by verbal agreement or otherwise, to revive the mortgage, and attach its security to other debts. To hold otherwise would defeat the clear intent of the statute. For whenever the signature of the wife could be obtained to a mortgage upon the homestead, the prohibition would be substantially destroyed, as the husband could keep that mortgage in existence as security for new debts to an indefinite amount. It seems clear that this cannot be done."

In *Campbell v. Babcock,* 27 Wis. 512, Lyon, J., commenting on *Spencer v. Fredendall,* says:

"It was held in that case, that the husband could not without the concurrence of the wife, by any act of his, give vitality to a mortgage on the homestead, that had once been paid. In other words, the court held that the act of the husband alone could not reinstate and give life to such mortgage after it had become *functus officio.*"

In this case, by agreement between Simmons and the plaintiff in error, the mortgage of the plaintiff was discharged of record. The consideration of the discharge was partly paid, and the conditions upon which it was discharged were partly performed by Simmons. All this, too, was done without the knowledge or consent of his wife. This mortgage being discharged of record, and partly paid, and all this done in accordance with the exactions and conditions of a contract made by the mortgagee, to—

"Hold that her husband, without her consent or knowledge, could transform an inoperative document into a valid and binding mortgage, seems to be a gross perversion of the law which was made for her protection. The restriction that the law imposes upon the alienation of the homestead by the hus-

band, is a most valuable right to the wife, and is doubtless founded in wise consideration of public policy. But that restriction would be practically removed and defeated, were we to hold that Mrs. Babcock is estopped by the act of her husband from availing herself of the defense that the mortgage is void. We find no authority for pushing the doctrine of estoppel *in pais* to that extent." (*Campbell v. Babcock*, supra.)

The case of *Barber v. Babel*, 36 Cal. 11, is a very instructive one. The material facts are: Frederick Babel and his wife Sophia, on the 17th of March, 1860, executed a mortgage to plaintiff Julia A. Barber; on the 22d of April, 1861, they filed a declaration to hold the land mortgaged as a homestead, this declaration being required under the California statute. On the 27th of February, 1865, Frederick Babel, alone, executed another note for the amount due the plaintiff, and a second mortgage to secure it on the land, which was accepted in place of the first, it being surrendered, and a discharge and release of it entered of record. To accomplish this, Frederick Babel made false and fraudulent representations to Julia A. Barber, stating to her that said land was not claimed as a homestead. Before taking the second note the plaintiff applied to the wife, Mrs. Babel, to execute a further mortgage, which she refused to do. The note not having been paid, this action was commenced, a statement of the whole facts made, and a foreclosure asked for. The defense relied upon the statutes of limitation, upon the discharge of the first mortgage, and that the second was void without the signature of the wife. Chief Justice Sawyer delivered the opinion of the court, and said:

"The last mortgage was not executed by the wife, and was therefore void. . . . It is claimed, however, that the giving of the new note by the husband in the place of the old, and for the same indebtedness, was an extension of the time of payment of the old indebtedness, and that this extension continued the old mortgage in life; and such must have been the opinion of the district court. This raises the question, as to the power of the husband to affect the rights of the wife in the homestead, in any manner, by his acts alone. The land is impressed with the character of a homestead by executing, acknowledging and recording, in the same manner as convey-

ances affecting real estate are required to be acknowledged and recorded, a declaration of intention to claim the same as a homestead. . . . Under its provisions, we are of opinion that there is a joint estate or interest in the homestead vested in the husband and wife, . . . and that this interest can no more be affected without her concurrence in the mode prescribed, than the ordinary estates in the lands of others without the concurrence of the parties holding them. The cases of *Lord v. Morris*, 18 Cal. 482; *Lent v. Morrill*, 25 id. 499; *Lent v. Shear*, 26 id. 370; *Low v. Allen*, 26 id. 141, and other cases to the same effect, establish the principle that after a conveyance of the mortgaged premises, or the transfer of any interest therein, the mortgagor has no power to create, revive, renew, or prolong a charge upon the premises, or interest therein, so conveyed or transferred, while such interest remains in another party. . . . The principles established by these cases directly apply to the case under consideration. The original note and mortgage were valid, but subsequent to the making of this mortgage the defendants duly recorded their declaration of homestead, and thereby became jointly vested with new and important rights, which were inalienable, except in the mode prescribed by the statute. The wife acquired a new, distinct, personal interest, which she did not before have, and which she could not afterward be deprived of by any act of the husband. . . . The mortgage subsequently executed by the husband was not executed by the wife, and was, therefore, if the statute means what it says, invalid and ineffectual for any purpose whatever. The giving of the new note, and extending the time of payment, were also the act of the husband alone, to which the wife was no party. Under the authorities cited, he could no more, indirectly, in this mode, effect the same purpose, by continuing the old lien beyond the time when the action would be barred as to the wife, than in the direct mode attempted of executing a new mortgage and discharging the old. If the lien was continued, it was by virtue of a new contract affecting this land. To continue the old mortgage in force after it had been barred, and sell under a decree of the court foreclosing it, would be to effect an alienation through the aid of the court, and a new contract, as clearly and effectually as though the same result should be accomplished by making and foreclosing the new mortgage. The fraudulent representations of the husband cannot affect the question as to the statute of limitations, for the wife was no party to the fraud. She made no

representations upon the subject; she expressly refused to execute the new mortgage, and thereby put the mortgagees on their guard. They must have supposed it important to obtain her signature, or they would not have sought it. The declaration of homestead was a matter of public record, and notice to all the world. The mortgagees had the means of knowledge, and as to the wife, at least, they were bound to take notice of the homestead estate. The fraudulent representations were the act of the husband alone, and he was no more authorized to prolong the statute of limitations, thereby creating a new right, and to destroy the homestead right in this way, than in any other. He had no power, alone, to affect it in any manner. . . . If the mortgagee lost anything by trusting to the false representations of the husband, when the records afforded notice of the true state of the case, the wife is not in fault, and the plaintiff is, unfortunately for the credit of human nature and her own interests, not the first in the business world to find herself a 'victim of misplaced confidence.'"

The case of *Snell v. Palmer*, 12 Bradw. 337, that of *Anderson v. Culbert*, 55 Iowa, 233, and that of *Tolman v. Leathers*, 1 McCr. 329, all bear strongly on the proposition that, however strong the equity, the court is powerless to do it. The logic of all these cases is, that no act of the husband alone can create, extend, postpone, or renew a lien upon a homestead, without the written consent of the wife in the exact manner prescribed. This case was tried by the court below, a jury being waived; in the original and amended petitions, in the findings of fact, in the entire record, there is no specific allegation or finding that the release and satisfaction of the mortgage was procured by fraud, or occasioned by mistake, accident, or surprise.

We recommend the affirmance of the judgment of the district court.

By the Court: It is so ordered.

All the Justices concurring.