MINERS' SAV. BANK v. SANDY et al.

(Circuit Court, D. Kansas. January 23, 1896.)

HOMESTEAD—RIGHTS OF WIFE—LAW OF KANSAS.

One S. induced his wife, who was of unsound mind, to execute a mortgage on their homestead, situated in Kansas, the mortgagee being ignorant of the wife's incapacity. Upon the institution of a suit for foreclosure, to which S., his wife, and their children were made parties, S. set up such incapacity as a defense. Pending the suit, S.'s wife died, and the bill was dismissed as against the children, at plaintiff's request. *Held*, that as, under the laws of Kansas, the right of the wife in the homestead was only a right to be protected in its enjoyment during her life, the title remaining in the husband, S., could not, after his wife's death, resist the enforcement of the mortgage.

Rossington, Smith & Dallas and Clifford Histed, for plaintiff.
Thos. J. White, for defendant.

WILLIAMS, District Judge. On the 1st day of July, 1886, Edwin Sandy was the owner of the northeast quarter of section 24, in township 4 S., range 3 E. of the sixth P. M., containing 160 acres of land, situated in the district of Kansas. He was a married man, and the head of a family, and occupied the 160 acres of land as a homestead. Upon that date he executed to the Equitable Mortgage Company a note in the sum of $2,000, and to secure the payment of the same he executed, in due form of law, a mortgage upon said 160 acres of land, his wife, Mary H. Sandy, joining with him in the execution of the note and mortgage. The said note and mortgage were afterwards assigned, for a valid consideration, before maturity, to the Miners' Savings Bank, the plaintiff in this action. Default having been made in the payment of the sum of money thus secured, this action is brought to foreclose the mortgage, and condemn the property secured thereby to be sold for the payment of said debt. Edwin Sandy and the children of Edwin Sandy and Mary H. Sandy are made defendants in the original bill, and Edwin Sandy, as guardian of Mary H. Sandy, who had been, after the execution of the mortgage and before the commencement of this action, declared insane, was also made a party. After the commencement of this action, Mary H. Sandy died, and, upon motion of the plaintiff, the cause against the other defendants, save and excepting Edwin Sandy, was dismissed without prejudice, permission so to do having been granted by this court at a term long since past. The defendant Edwin Sandy answers the complaint herein, as did the children of Edwin Sandy and Mary H. Sandy, setting up and contending that the mortgage in this cause was upon the homestead of the defendants Sandy and wife, and that at the time of its execution Mary H. Sandy was insane and incapable of consenting to the execution of the mortgage, and that therefore the mortgage is void. To support the contention that Mary H. Sandy was insane at the time much testimony has been taken, and is submitted in this cause. Upon a careful consideration of it, although much of it is utterly incompetent and without weight in this controversy, taken as a whole it may be admitted that it does show that, at the time of the execution of the mortgage, the said Mary H. Sandy was of unsound mind and incapable of making contracts or consenting thereto. It is further contended by the defendant that the person who acted as agent for the Equitable Mortgage Company in this transaction was aware of the fact that said Mary H. Sandy, at the time of the execution of the mortgage, was of unsound mind. I am of the opinion that the testimony utterly fails to show either that the person claimed to be the agent of the Equitable Mortgage Company was such agent, or that he knew, at the time of the execution of the mortgage, or before that time, that Mary H. Sandy was of unsound mind. If it shows anything, it shows that he did not know and was not aware of any such condition of mind in Mary H. Sandy. But, from the view that

the court entertains of this case, it is not material whether Mary H.
Sandy, at the time of the execution of the mortgage, was or was
not insane. Mary H. Sandy is dead, and all her rights and inter-
ests have passed out of this controversy. The children of Mary H.
Sandy and Edwin Sandy have passed out of this case, because the
bill against them is dismissed. If Mary H. Sandy were alive at this
time, then the contention made by the able counsel for the defend-
ant in this case would be readily considered by the court to be cor-
rect, in the main. True it is that the organic law and the acts of
the legislature of the state of Kansas protect the homestead of the
citizens of the state against the claims of any one, except it be for
the purchase money, for taxes, for improvements, and special liens
created by the joint consent of the husband and wife. And this
court very cheerfully follows the adjudications of the highest courts
in the state of Kansas upon the question of homesteads. And
when it does this, it is convinced that the doctrine laid down in Jen-
ness v. Cutler, 12 Kan. 515, is a clear statement of the rights of the
wife in the homestead. The court in that case uses the following
language:

"We suppose it may also be said that the wife has, in one sense, an estate
in the homestead occupied by herself and husband, although the title to the
same may be in her husband. But still, if it is an estate, it is such an estate
as has never been defined by law, an estate unknown to the common law,—
technically, no estate at all. The whole estate in such a case is, in fact, wholly
in the husband, with simply a restriction for the benefit of his family upon
his power to alienate the same. It is true the wife has an interest in the
homestead,—a present and existing interest, an interest that will be protected
by the courts; but it is simply an interest growing out of the marriage rela-
tion, and has no other or different foundation than the marriage relation and
occupancy. It requires no instrument in writing to create such an interest,
nor does it require any instrument in writing to defeat it; and if the wife
should die while occupying the premises as a homestead, she would have noth-
ing that would descend to her heirs or go to her executors or administrators,
and nothing that she could devise or bequeath. The whole estate would con-
tinue to belong to her husband, and after her death he could sell and convey
the same by a deed executed by himself alone. As we have said, the wife
has a present and existing interest in the homestead, such as will be pro-
tected by the courts, but so she has in all the other property of her husband."

In the case of Jenkins v. Simmons, 37 Kan. 496, 15 Pac. 522, which
is relied upon with much force by the learned counsel for the de-
fendant, the court says that "it holds strictly to the rule that noth-
ing but the consent of the wife to the alienation or mortgage upon
the homestead, in the exact manner prescribed by law, can bind her."
In view of these adjudications by the supreme court of the state
of Kansas, and of the fact that Mary H. Sandy, the wife, is dead,
and that all the other defendants but Edwin Sandy have passed out
of this case by proper orders, shall Edwin Sandy be allowed to set
up, as against the claim of the plaintiff here, the invalidity of the
mortgage, because of the fact that, as he contends, his wife was in-
sane at the time of its execution? By the testimony in this case,
he himself prevailed upon the wife to go to the proper officer, ac-
knowledge the mortgage, and execute the notes. It was done at
his instigation, and if any one knew of the insane condition of Mary

H. Sandy, it was Edwin Sandy. The plaintiff in this case did not know it. When Mary H. Sandy, the wife, no longer needs the protection of the law in order to secure to her her homestead, shall Edwin Sandy be allowed to reap a benefit of his own wrong? There is no contention but what the money was honestly paid over to Edwin Sandy, and some of it used by him to pay prior incumbrances and taxes, and for the general betterment of the place. The equities of this case are very strong against Edwin Sandy's defense. The mortgage is not void, but so long as Mary H. Sandy lived it could not be enforced. Upon her death, there is no reason why it should not be enforced. In my opinion the plaintiff is entitled to recover the full amount of the note and interest coupons that remain unpaid, and to have a decree of foreclosure against the land for the payment of the same. Let such decree be entered.